BOWIE v ARDER

DUONG v HONG

Docket Nos. 92477, 92629. Argued April 7, 1992 (Calendar Nos. 4-5).
    Decided September 22, 1992. Rehearing denied in *Duong, post,*
    1202.

Darresia Bowie brought an action under the Child Custody Act,
    MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.,* in the Genesee
    Circuit Court against Milton Arder, seeking custody of her
    granddaughter, the child of her deceased daughter and the
    defendant. The court, Earl E. Borradaile, J., dismissed the
    action for lack of subject matter jurisdiction. The Court of
    Appeals, HOOD, P.J., and JANSEN and G. S. ALLEN, JJ., affirmed
    in an opinion per curiam, finding that the act does not give
    third parties the right to file original child custody actions in
    the circuit court (Docket No. 130547). The plaintiff appeals.

Thanh Quoc Duong and Tuyet Trieu brought an action under the
    Child Custody Act in the Kent Circuit Court against Long Han
    Hong and Phan Hue Ong, seeking custody of the defendants'
    child, whom they had allowed to live with them. The court,
    Robert W. Benson, J., entered an award in accordance with a
    stipulation recognizing custody in the plaintiffs. Thereafter, the
    defendants twice petitioned unsuccessfully for a change of
    custody, and subsequently moved to vacate the court's original
    order granting custody to the plaintiffs on the ground that the
    court lacked subject matter jurisdiction, which the court de-
    nied. The Court of Appeals, SULLIVAN, P.J., and
    D. E. HOLBROOK, JR., and McDONALD, JJ., affirmed, holding
    that while the circuit court has subject matter jurisdiction of
    custody disputes, who can initiate an action under the act is a
    question of standing, and that a third party with whom a child
    resides has such standing (Docket No. 134499). The defendants
    appeal.

    In an opinion by Justice BRICKLEY, joined by Chief Justice

REFERENCES

Am Jur 2d, Courts §§ 87-97; Divorce and Separation §§ 963-973.
See the Index to Annotations under Custody and Support of Chil-
    dren; Jurisdiction.

CAVANAGH, and Justices BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court *held:*

The circuit court has subject matter jurisdiction to hear and determine child custody actions pursuant to the Child Custody Act without regard to the identity of the party who files the action. Although the circuit court does not lack subject matter jurisdiction to hear an original action for custody filed by a third party, a third party does not gain standing to petition for custody under the act because a child resides or has resided with that party. While the circuit court has subject matter jurisdiction to hear and determine bona fide custody disputes, it exceeds its jurisdiction when, in an original action for custody under the act, it enters an order transferring custody from a parent to a third party where there is no dispute between the parties with regard to the custody of the child.

1. A child, the subject matter of a custody dispute, is within the subject matter jurisdiction of the circuit court unless prohibited by the constitution or by statute or unless jurisdiction is given exclusively to another court. The Child Custody Act involves procedure only; it does not create substantive rights of entitlement to custody of a child, regardless of whether the child lives with parents or a third party. There is no provision of the act that gives third parties who are not guardians a right to legal custody because a child resides with or has resided with them. Nor can third parties create a custody dispute simply by filing a complaint in the circuit court alleging that giving legal custody to them is in the best interests of a child. A third party does not have standing to create a custody dispute not incidental to divorce or separate maintenance proceedings unless that party is a guardian of a child or has a substantive right of entitlement to the custody of the child. When a circuit court entertains an original action for custody by a party who does not have standing, the court does not lack jurisdiction, but errs in the exercise of its jurisdiction.

2. The Child Custody Act governs the resolution of disputes between parties claiming a right to the custody of a child. It was not intended to be a means to legalize voluntary transfers of physical custody of a child from a parent to a third party. The Legislature enacted specific legislation governing the voluntary suspension of parental rights through guardianship proceedings, and placed these proceedings exclusively with the jurisdiction of the probate court. Thus, a circuit court exceeds its subject matter jurisdiction when, in an original action under the act, it enters an order transferring custody from a parent

to a third party where there is no dispute between the parent and the third party with regard to the custody of a child.

3. In *Bowie v Arder,* the circuit court incorrectly concluded that it was without subject matter jurisdiction to hear and determine the petition for custody. However, because it could have dismissed the case on the ground that the plaintiff did not have standing to bring an action for custody under the Child Custody Act in that she was not a guardian or limited guardian and did not attain a right to legal custody because the child resided with her, the dismissal of the original third-party custody action may be affirmed.

4. In *Duong v Hong,* because the circuit court lacked subject matter jurisdiction, its original order awarding custody and all subsequent orders pertaining to custody are void.

*Bowie,* affirmed.

*Duong,* reversed and remanded.

Justice LEVIN, writing separately, was not persuaded that the Legislature has deprived the circuit courts of subject matter jurisdiction of these controversies or that any of the parties lack standing to maintain an action concerning custody.

190 Mich App 571; 476 NW2d 649 (1991) affirmed.

191 Mich App 462; 478 NW2d 922 (1991) reversed.

397 Mich 225; 244 NW2d 827 (1976) overruled.

COURTS — CIRCUIT COURTS — SUBJECT MATTER JURISDICTION — THIRD-PARTY CUSTODY — CHILD CUSTODY ACT.

The circuit court has subject matter jurisdiction to hear and determine child custody actions pursuant to the Child Custody Act without regard to the identity of the party who files the action; although the circuit court does not lack subject matter jurisdiction to hear an original action for custody filed by a third party, a third party does not gain standing to petition for custody under the act because a child resides or has resided with that party; while the circuit court has subject matter jurisdiction to hear and determine bona fide custody disputes, it exceeds its jurisdiction when, in an original action for custody under the act, it enters an order transferring custody from a parent to a third party where there is no dispute between the parties with regard to the custody of the child (MCL 722.21 *et seq.*; MSA 25.312[1] *et seq.*).

*Earl R. Spuhler* for the plaintiff in *Bowie.*

*Joseph S. Smigiel, Jr.* for the plaintiffs in *Duong.*

*Thomas R. McCombs* for the defendant in *Bowie.*

*Law, Weathers & Richardson, P.C.* (by *Roger Law*), and *Anne L. Argiroff* for the defendants in *Duong.*

Amici Curiae:

*Victor, Robbins & Bassett* (by *Scott Bassett*) for the State Bar of Michigan, Family Law Section.

*Janet E. Lanyon* for the Women Lawyers Association of Michigan.

*Suellyn Scarnecchia* and *Julie Kunce Field* for the University of Michigan Law School, Women in the Law Clinic.

*Ann L. Routt* for Legal Services of Southeastern Michigan.

*Michael R. Yales* for Legal Services of Southeastern Michigan.

*Kenneth C. Penokie* for Legal Services of Northern Michigan.

*John Forczak* for Michigan Legal Services.

BRICKLEY, J. We granted leave to appeal in these cases to resolve several issues with respect to original child custody actions in circuit court. The questions presented are: 1) Does the circuit court have subject matter jurisdiction to hear and determine an original third-party child custody complaint under the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*? 2) If the circuit court does have jurisdiction over such a claim, does a third party have standing to petition for custody under the act because the child resides with the third party, or resided with the third party in the past? 3) Does the circuit court have subject matter

jurisdiction over an original petition for custody under the act where there is no dispute with regard to the custody of a child? and 4) Where there has been no finding of parental unfitness, and absent divorce or separate maintenance proceedings, is a circuit court award of custody to a third party rather than a parent, on the basis of the best interests of the child, a violation of due process?

We hold that the circuit courts have subject matter jurisdiction to hear and determine child custody actions pursuant to the Child Custody Act, without regard to the identity of the party who files the action. We further hold that, although the circuit courts do not lack subject matter jurisdiction to hear an original action for custody filed by a third party, a third party does not gain standing to petition for custody under the act because a child resides with the third party, or resided with the third party in the past. Finally, we hold that while the circuit courts have subject matter jurisdiction to hear and determine bona fide custody disputes, a circuit court exceeds its jurisdiction when it enters an order transferring custody from a parent to a third party where there is no dispute between the parties with regard to the custody of the child. Because we resolve these cases as a matter of statutory construction, we do not reach the constitutional question.

Thus, we affirm the decision of the Court of Appeals in *Bowie v Arder,* 190 Mich App 571; 476 NW2d 649 (1991), on grounds different from those relied on by the lower courts, and we reverse the decision of the Court of Appeals in *Duong v Hong,* 191 Mich App 462; 478 NW2d 922 (1991).

I

In each of these cases the parent or parents of a child allowed the child to reside with one or more

third parties[1] for a period of time without either the parents or the nonparents taking steps to formalize the arrangement. In each case, however, the third parties filed an action in circuit court pursuant to the Child Custody Act, alleging that the child had resided with the nonparents for a period of time and also alleging that giving custody of the child to the nonparents would be in the best interests of the child.

### A

Carolyn Bowie, now deceased, and Milton Arder affirmed that they were the natural parents of Ashlee Bowie.[2] After Ashlee's birth on January 6, 1988, Carolyn and Ashlee lived with Carolyn's mother, Darresia Bowie. Milton lived elsewhere. Less than a year later, on December 9, 1988, Carolyn died. Since the spring of 1990 Ashlee has lived with her father.

The parties dispute the events and circumstances of the period between Carolyn's death in December 1988 and the spring of 1990. Darresia alleges that Ashlee continued to live with her during this period and that Milton had minimal contact with Ashlee and herself. She further alleges that Milton demonstrated little love, care, or concern for the child, and that he picked up Ashlee, saying he would take her for a ride in his car, and then failed to return the child to her grandmother. Milton denies these allegations and alleges that he left Ashlee with Darresia for a short period of time. Milton further alleges that he asserted his parental rights in the spring of 1990

---

[1] Throughout this opinion the terms "nonparent" and "third party" refer to any person who is not the parent of a child.

[2] Carolyn and Milton executed an affidavit of parentage on January 10, 1988.

when he picked up Ashlee at Darresia's home and brought the child home to live with him.

Darresia filed an action in circuit court on May 22, 1990, seeking custody of Ashlee pursuant to the Child Custody Act. Following a hearing, the circuit court dismissed the action for lack of subject matter jurisdiction, relying on *Ruppel v Lesner,* 421 Mich 559; 364 NW2d 665 (1984). Darresia appealed as of right, and the Court of Appeals affirmed. We granted leave to appeal. 439 Mich 922 (1992).

B

Long Han Hong and Phan Hue Ong are the natural parents of Kaye Star Hong, born December 30, 1981. Long and Phan emigrated from Vietnam in early 1981 and 1980, at the ages of twenty-one and nineteen, respectively. Phan gave birth to the couple's first child, a son named Oai, in the United States before her husband Long arrived here. The couple also have a younger daughter, Lily. Upon their arrival in the United States, Long and Phan had no home or jobs, nor could they speak, read, or understand English.

During an English class, Long and Phan met another couple who had emigrated from Vietnam. Mike Seng Yang[3] and Tuyet Trieu came to the United States in 1971. At the time the couples met, Mike and Tuyet were in their early thirties and did not have any children.

For reasons that are in dispute, Long and Phan allowed Kaye Star to live with Mike and Tuyet when she was approximately four months old. After caring for Kaye Star for approximately two months, Mike and Tuyet filed an action in circuit

---

[3] Appellee Thanh Quoc Duong legally changed his name to Mike Seng Yang.

court on June 29, 1982, seeking custody of Kaye
Star pursuant to the Child Custody Act. Long and
Phan stipulated to the awarding of custody to
Mike and Tuyet,[4] and the circuit court entered an
order consistent with the stipulation on July 16,
1982.[5] Before entry of the order, the parties did not
appear in court and no hearing was held.

The parties dispute whether the transfer of
custody to Mike and Tuyet was intended to be
permanent. Mike and Tuyet allege that Long and
Phan wanted them to adopt Kaye Star, but discov-
ered that a consent adoption would not be possi-
ble,[6] and instead decided to give Mike and Tuyet
permanent custody of Kaye Star. Long and Phan
deny these allegations, and allege that the ar-
rangement was never intended to last more than
three years or until Mike and Tuyet had their own
child, with the option to terminate the arrange-
ment sooner if Long and Phan desired.

In the time period from July of 1982, when the

---

[4] Apparently the stipulation was signed at the office of Mike and
Tuyet's legal counsel, Joseph Smigiel. Long and Phan were not
represented by counsel at this meeting, although a friend of Mike's
was present as an interpreter.

[5] The stipulation and order provided as follows:

   Now come the above-named parties and hereby stipulate and
   agree to the entry of the following order awarding custody of
   Kaye Star Hong to the plaintiffs.

                    *    *    *

   It is hereby ordered that the plaintiffs, Thanh Quoc Duong
   and Tuyet Trieu, shall have and are hereby awarded the joint
   care and custody of the minor child, to-wit; Kaye Star Hong,
   born December 30, 1981.
   It is further ordered that the defendants, Long Han Hong
   and Phan Hue Ong, shall not be ordered to pay any amount as
   child support at this time.
   It is further ordered that the defendants, Long Han Hong
   and Phan Hue Ong, shall have reasonable rights of visitation
   with the minor child.

[6] See MCL 710.43(1)(a)(v); MSA 27.3178(555.43)(1)(a)(v).

custody order was entered, until March of 1983, there does not appear to be any dispute that Long and Phan continued to visit Kaye Star while she resided with Mike and Tuyet. The parties' relationship appears to have been amicable at this time. It also appears that Long and Phan provided some assistance in the form of clothes and food, but the extent of this assistance is in dispute.

For reasons that are unclear, in March of 1983 Long and Phan moved to California. They did not take action to terminate the custody arrangement at this time. The parties disagree over promises made regarding contact between Long and Phan and Kaye Star after the move to California.

Six months later, Tuyet gave birth to a baby boy, whom Mike and Tuyet named Steven. By December of 1983, when Kaye Star was two years old, the parties' relationship was no longer amicable. Long and Phan wanted to terminate the custody arrangement and asked that Kaye Star be returned to them. The reason for Long and Phan's desire to terminate the arrangement is in dispute. Mike and Tuyet allege that Long and Phan were unhappy with them because they would not assist in sponsoring relatives of Long and Phan to allow them to immigrate to the United States. Long and Phan deny this allegation and allege that they wanted to terminate the arrangement because they feared Mike and Tuyet would favor their own son over Kaye Star. Mike and Tuyet did not consent to the termination of the custody arrangement.

Long and Phan contacted legal counsel and filed a petition for change of custody on September 14, 1984, alleging, inter alia, that they intended the custody arrangement to be temporary only. Kaye Star was almost four years old at this time. The case was referred to the Family Services Associa-

tion for an evaluation. The evaluator recommended that Kaye Star remain with Mike and Tuyet on a permanent basis, and that Long and Phan not be granted regular visitation. The evaluator felt that the situation should be treated like an adoption. After a trial, the circuit court, in an order dated May 2, 1985, ordered that custody would remain with Mike and Tuyet, and that Long and Phan would have weekly visitation with Kaye Star.

By the time the circuit court denied Long and Phan's petition for a change of custody, Mike and Tuyet had two more children, twin sons born in 1985. Also, at some point, Mike and Tuyet began calling Kaye Star "Jenny." In 1987, when Kaye Star was five years old, Long and Phan again unsuccessfully petitioned for a change of custody. Another evaluation was done, and apparently because of the recommendation against a change of custody, Long and Phan abandoned their petition.

Mike and Tuyet petitioned for child support in September of 1988, but their petition was denied by the circuit court. At some point in 1990, Long and Phan voluntarily suspended visitation because of Kaye Star's behavioral problems during visits with their family, which they attributed to Mike and Tuyet's interference. Mike and Tuyet deny this allegation. Mike and Tuyet petitioned the circuit court to formally suspend visitation, but this petition was denied. Long and Phan resumed visitation with Kaye Star in June 1990.

On September 18, 1990, Long and Phan filed in the circuit court a motion to vacate the court's original order of July 16, 1982, granting custody to Mike and Tuyet, and all subsequent orders, on the basis that the court lacked subject matter jurisdiction to enter the original order. The circuit court denied this motion. Long and Phan appealed as of right, and the circuit court's denial was

affirmed by the Court of Appeals. We granted leave to appeal. 439 Mich 923 (1992).

II

In *Ruppel v Lesner, supra,* this Court reversed a decision of the Court of Appeals affirming a circuit court's grant of temporary custody of a child to the child's maternal grandparents. At the time the grandparents petitioned for custody under the Child Custody Act, the child was living with her parents, who had not instituted divorce or separate maintenance proceedings. In reversing the lower court decisions, we held that

> *where a child is living with its parents,* and divorce or separate maintenance proceedings have not been instituted, and there has been no finding of parental unfitness in an appropriate proceeding, *the circuit court lacks the authority* to enter an order giving custody to a third party over the parents' objection. [*Id.* at 565. Emphasis added.]

The parties in the instant cases focus their arguments on the emphasized language. The parents argue that this Court, by stating that the circuit court lacks "authority," meant that subject matter jurisdiction is lacking where divorce or separate maintenance proceedings have not been initiated and where there has been no finding of parental unfitness. The nonparents argue that the issue is not jurisdiction, but standing, and that where a child resides with a third party rather than the parents, or has resided with a third party in the past, that third party has standing to petition for custody of the child under the act.

The Court of Appeals has interpreted our holding in *Ruppel* in various ways. In *Marshall v Beal,* 158 Mich App 582, 589; 405 NW2d 101 (1986), the Court held that a circuit court may only consider third-party claims of child custody where the court

has otherwise obtained jurisdiction over the child.[7] In *Prawdzik v Hiner,* 183 Mich App 245, 249; 454 NW2d 399 (1990), the Court held that a circuit court has jurisdiction over a third-party child custody petition in three circumstances: where divorce or separate maintenance proceedings have been initiated, where there has been a finding of parental unfitness, *and where the child is living with the third party rather than the parents.*

A further interpretation of our decision in *Ruppel* was advanced in *Solomon v Lewis,* 184 Mich App 819; 459 NW2d 505 (1990) (opinion of MARILYN J. KELLY, J.).[8] Judge KELLY reasoned that *Ruppel* addressed the question of standing rather than jurisdiction, and she concluded that a third party who has physical custody of a child has standing to petition for legal custody of that child under the Child Custody Act.

In *Tallman v Milton,* 192 Mich App 606; 482 NW2d 187 (1992), the Court agreed with the earlier panels that held that the issue in *Ruppel* was standing, rather than jurisdiction. However, it noted that "[t]o have standing one must have a legally protected interest that is in jeopardy of being adversely affected," *id.* at 612-613, and affirmed the circuit court's dismissal of the third-parties' custody petition. The Court reasoned that, as foster parents, the third-parties' rights were controlled by their agency/foster parent agreement with the Department of Social Services, and that the agreement did not give them the right to

[7] See also *Hastings v Hastings,* 154 Mich App 96, 101; 397 NW2d 232 (1986); *Doss v Baker,* 173 Mich App 546, 548; 434 NW2d 190 (1988).

[8] Rather than granting leave to appeal in *Solomon,* this Court vacated the decision of the Court of Appeals and remanded for a determination whether the third-party plaintiffs had standing to petition for custody under 1990 PA 315, MCL 722.26b(2); MSA 25.312(6b)(2), giving the limited guardian of a child standing to petition for custody in certain circumstances. 437 Mich 983 (1991).

seek permanent legal custody of their foster child, and therefore they had no standing under the act. *Id.* at 613.

In each of the instant cases, the panels of the Court of Appeals adopted one of these interpretations. In *Bowie v Arder, supra* at 573, the Court held:

> The import of the *Ruppel* decision is to limit the authority of the circuit court. The *Ruppel* Court held that the Child Custody Act does not give third parties the right to file original child custody actions in circuit court.
>
> On the basis of the holding in *Ruppel,* we affirm the trial court's finding that it lacked subject matter jurisdiction. We interpret the *Ruppel* decision as holding that once judicial intervention has already taken place, the court may award custody to third parties. Otherwise, there is no authority allowing a nonparent to create a child custody dispute.

In contrast, the Court in *Duong v Hong, supra* at 465-466, found Judge KELLY's opinion in *Solomon* persuasive, and held that circuit courts have subject matter jurisdiction over custody disputes and that the issue of who can initiate an action for custody under the Child Custody Act is a question of standing. Further, the *Duong* Court held that a third party with whom a child resides has standing to petition the circuit court for custody of that child under the act. *Id.* at 466. The panel distinguished *Duong* from *Bowie* because in *Bowie,* at the time the nonparent petitioned for custody, the child resided with her father, while in *Duong* the child resided with the third parties when they filed their custody action. *Id.* at 467, n 2.

III

We must decide, then, whether this Court's deci-

sion in *Ruppel* rested on a lack of standing or subject matter jurisdiction. "Jurisdiction, when applied to courts, is the power to hear and determine a cause or matter." *Langdon v Wayne Circuit Judges,* 76 Mich 358, 367; 43 NW 310 (1889). "Jurisdiction lies at the foundation of all legal adjudications. The court must have cognizance of the class of cases to which the one to be adjudicated belongs . . . ." *Ward v Hunter Machinery Co,* 263 Mich 445, 449; 248 NW 864 (1933).

The parents argue that the Child Custody Act does not create subject matter jurisdiction over child custody disputes, and that a circuit court must look outside the act for subject matter jurisdiction to hear *any* child custody case. For example, pursuant to statute, a circuit court has jurisdiction to hear and decide a child custody dispute that is ancillary to divorce proceedings.[9] The parents concede that the act contemplates original actions for custody as well as actions for custody that are incidental to other actions before the court.[10] However, citing this Court's decision in *Sovereign v Sovereign,* 354 Mich 65; 92 NW2d 585 (1958), the parents argue that a circuit court's equitable jurisdiction over original custody actions is limited to disputes between the natural and legal parents of a child.

In *Sovereign,* this Court held that while circuit courts do not retain for all purposes the broad jurisdiction over children formerly exercised by chancery courts, they do have jurisdiction to hear

[9] MCL 552.16(1); MSA 25.96(1) provides that upon entering a judgment of divorce the circuit court may enter an order concerning the care, custody, and support of the minor children of the parties. The circuit court's jurisdiction over a child pursuant to divorce proceedings continues until the child is eighteen years old. MCL 552.17a(1); MSA 25.97(1)(1).

[10] MCL 722.26; MSA 25.312(6) provides that the act "shall apply to all circuit court child custody disputes and actions, whether original or incidental to other actions."

a custody dispute between the parents of a child, who had been denied a divorce, under the general and historic chancery power. The Court stated:

> The custody controversy is between 2 persons who are the natural and legal parents of the child. With prior dismissal of the divorce suits, there is no specific statutory remedy available in any court —indeed, there is no provision for adjudication of this parental dispute over child custody at all— absent general chancery jurisdiction. [*Id.* at 96.]

The parents argue, then, that while *Sovereign* recognized continuing equitable jurisdiction in circuit courts over children who are the subject of custody disputes, such jurisdiction only extends to disputes between a child's parents.

In contrast, the nonparents point out that the circuit court's subject matter jurisdiction is conferred by the constitution and by statute in broad and affirmative terms, rather than by the enumeration of powers. Const 1963, art 6, § 13 provides that "[t]he circuit court shall have original jurisdiction in all matters not prohibited by law . . . ." Further, MCL 600.601; MSA 27A.601 provides:

> Circuit courts have the power and jurisdiction
> (1) possessed by courts of record at the common law, as altered by the constitution and laws of this state and the rules of the supreme court, and
> (2) possessed by courts and judges in chancery in England on March 1, 1847, as altered by the constitution and laws of this state and the rules of the supreme court, and
> (3) prescribed by rule of the supreme court.

Finally, MCL 600.605; MSA 27A.605 provides:

> Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, ex-

cept where exclusive jurisdiction is given in the
constitution or by statute to some other court or
where the circuit courts are denied jurisdiction by
the constitution or statutes of this state.

Thus, because circuit courts are courts of gen-
eral jurisdiction, where subject matter jurisdiction
is presumed unless expressly prohibited or given
exclusively to another court by constitution or
statute,[11] the nonparents argue that circuit courts
have jurisdiction over custody disputes, whether
instituted by parents or third parties. The non-
parents state that they are not aware of, nor have
the parents cited, any provision that denies a
circuit court jurisdiction over an original third-
party custody action or gives exclusive jurisdiction
over such an action to another court.

We agree with the nonparents that the circuit
court did not lack subject matter jurisdiction over
the original third-party child custody action in
*Ruppel.* A circuit court's equitable jurisdiction
extends to the power and jurisdiction "possessed
by courts and judges in chancery in England on
March 1, 1847, as altered by the constitution and
laws of this state and the rules of the supreme
court." MCL 600.601(2); MSA 27A.601(2). The
source of chancery court equitable jurisdiction
over children is somewhat obscure, but is gener-
ally thought to derive from the king's executive
power as *parens patriae* to protect his subjects, as
delegated to chancery courts. 4 Pomeroy, Equity
Jurisprudence (5th ed), § 1304, p 870. Infants are
persons not *sui juris,* i.e., they do not have the
capacity to manage their own affairs, therefore the
king, as *parens patriae,* took over the care of their
persons and property when they were without a

---

[11] See Practice Commentary to MCLA 600.601, pp 461-466.

guardian for either. 3 Story, Equity Jurisprudence (14th ed), § 1743, p 361.

Thus, the subject matter of a custody dispute— the child—was clearly within the jurisdiction of the English chancery courts, and therefore also falls under the subject matter jurisdiction of the circuit court, unless prohibited or given exclusively to another court. We agree with the nonparents that circuit court jurisdiction over child custody disputes has not been denied by the constitution or by statute, nor has such jurisdiction been given to another court.

Although the parents do not dispute that the circuit court has the power to hear and resolve custody disputes, the parents attempt to define the scope of the circuit court's jurisdiction over original child custody actions in terms of who the plaintiff is and whether that plaintiff has a right to custody of a child. However,

"[j]urisdiction over the subject matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial." [*Joy v Two-Bit Corp,* 287 Mich 244, 253-254; 283 NW 45 (1938).]

Thus, the parents' argument with respect to the circuit court's jurisdiction over child custody actions confuses the question whether the court has jurisdiction over a class of cases, namely, child custody disputes, with the question whether a particular plaintiff has a cause of action. The parents' approach to the circuit court's subject

matter jurisdiction would potentially transform every motion for summary disposition under MCR 2.116(C)(8) into a challenge to the court's jurisdiction.[12] This Court has previously noted:

> The loose practice has grown up, even in some opinions, of saying that a court had no "jurisdiction" to take certain legal action when what is actually meant is that the court had no legal "right" to take the action, that it was in error. If the loose meaning were correct it would reduce the doctrine of res judicata to a shambles and provoke endless litigation, since any decree or judgment of an erring tribunal would be a mere nullity. [*Buczkowski v Buczkowski,* 351 Mich 216, 222; 88 NW2d 416 (1958).]

Therefore, while the circuit court in *Ruppel* erred in the exercise of its jurisdiction, it did not lack subject matter jurisdiction over the original child custody action in that case merely because it was initiated by a third party.

IV

Having concluded that the circuit court had subject matter jurisdiction in *Ruppel,* we next consider whether this Court's decision in that case was based on the nonparent plaintiffs' lack of standing to petition for custody under the Child Custody Act. In *Girard v Wagenmaker,* 437 Mich 231, 251; 470 NW2d 372 (1991), this Court interpreted *Ruppel* as a decision addressing standing, holding that a putative father who did not have standing to establish his paternity under the Paternity Act as it existed in 1985[13] was a nonparent for purposes of the Child Custody Act, and, there-

---

[12] Such a motion argues that "[t]he opposing party has failed to state a claim upon which relief can be granted."

[13] MCL 722.711-722.730; MSA 25.491-25.510.

fore, the putative father also did not have standing under the Child Custody Act.

We agree with the nonparents that our decision in *Ruppel* turned on the third-party plaintiffs' lack of standing to petition for custody of their granddaughter under the Child Custody Act.

> [N]othing in the Child Custody Act, nor in any other authority of which we are aware, authorizes a nonparent to create a child custody "dispute" by simply filing a complaint in circuit court alleging that giving custody to the third party is in the "best interests of the child." [*Id.* at 566.]

In *Ruppel* we declined to interpret the Child Custody Act as a statutory means by which any interested person has standing to request the circuit court to make a determination of a child's best interests with respect to the custody of that child.[14]

However, the nonparents in these cases argue that our holding in *Ruppel* turned on the fact that the child in that case was not living with her grandparents when they filed their custody action. They emphasize that this Court concluded that "where a child is living with its parents," who have not instituted divorce or separate maintenance proceedings, the circuit court could not award custody to a third party. *Id.* at 565. The nonparents claim that a different case is presented where a child either resides with the third-party

---

[14] In contrast, "a person" may give information to the juvenile division of the probate court that a child has been abandoned or is without proper custody, upon the basis of which the court may conduct a preliminary inquiry to decide if the interests of the public or the child require further action. If the court decides that formal jurisdiction should be acquired, it will authorize the filing of a petition. MCL 712A.11(2); MSA 27.3178(598.11)(2).

Similarly, "[a] person interested in the welfare of a minor . . . may petition for the appointment of a guardian of the minor." MCL 700.424; MSA 27.5424.

petitioner or has lived with the third party in the past.

The nonparents urge this Court to adopt the reasoning of Judge KELLY in *Solomon, supra,* which emphasized that the child lived with the third-party petitioners at the time they sought custody and that the petitioners had possibly become the child's "psychological parents," *id.* at 824, and concluded that because the petitioners had a sufficient "personal stake" in the outcome of the litigation over the child's custody, they had standing to bring an action for custody under the Child Custody Act. *Id.* Judge KELLY noted that in order to have standing a party must have a "legally protected interest which is in jeopardy of being adversely affected." *Id.* at 822. See also *Tallman, supra* at 612. However, she appears to have assumed that because a child lives with a party other than the parent, that party thereby attains a *legal right* to the custody of the child, in competition with the child's parents or anyone else.

The question of standing is not merely whether a party has a "personal stake" in the outcome that will ensure "sincere and vigorous advocacy." See *Solomon, supra* at 824. Indeed, the third-party petitioners in *Ruppel* surely had a personal stake in the outcome of their custody action, and it was never claimed that they were not sincere and vigorous advocates. However,

> [o]ne cannot rightfully invoke the jurisdiction of the court to enforce private rights, or maintain a civil action for the enforcement of such rights, unless one has in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy. This interest

is generally spoken of as "standing" . . . . [59 Am
Jur 2d, Parties, § 30, p 414.]

We concluded in *Ruppel* that the Child Custody
Act involves procedure only, setting forth "pre-
sumptions and standards by which competing
claims to the right of custody are to be judged,"
but that the act *"does not create substantive
rights of entitlement to custody of a child." Id.* at
565 (emphasis added).

We noted one exception in *Ruppel* to our conclu-
sion that the act does not create substantive
rights. MCL 722.27b; MSA 25.312(7b) provides for
limited rights of visitation for grandparents. How-
ever, we cautioned that in a case where the third-
party petitioners are close relatives of the child,
"we must remember that, except for limited visita-
tion rights, grandparents have no greater claim to
custody than any other relative, or indeed any
other persons." *Ruppel, supra* at 566. Since our
decision in *Ruppel,* the Legislature has also given
a guardian, and a limited guardian in certain
circumstances, a right to petition under the act for
legal custody of a child for whom the petitioner is
a guardian. MCL 722.26b; MSA 25.312(6b).

We reiterate, however, that except with regard
to grandparents and guardians, the Child Custody
Act does not create substantive rights of entitle-
ment to custody of a child, whether the child lives
with the parents or with someone else. There is
simply no provision of the act that can be read to
give a third party, who is not a guardian or a
limited guardian, a right to legal custody of a child
on the basis of the fact that the child either
resides with or has resided with that party. Nei-
ther Judge KELLY, nor the nonparents in these
cases, have cited any other authority for the prop-
osition that third parties who have physical cus-
tody of a child attain a right to the legal custody

of that child. Presumably the Legislature could create such a right,[15] but at this point it has not.

Instead, in its most recent amendment of the Child Custody Act, the Legislature gave the guardian of a child, and a limited guardian in certain circumstances, standing to bring an action for custody of the child. MCL 722.26b; MSA 25.312(6b). It is true that guardians are a subgroup of the larger group known as "third parties." However, the Legislature has provided that guardians have "the powers and responsibilities of a

---

[15] For example, by statute a nonparent in Illinois may commence a custody proceeding, "but only if [the child] is not in the physical custody of one of his parents." Ill Ann Stat, ch 40, ¶ 601(b)(2).

Texas law provides:

> An original suit affecting the parent-child relationship may be brought at any time by:
> (1) a parent of the child;
> (2) the child (through a representative authorized by the court);
>
> * * *
>
> (4) a guardian of the person or of the estate of the child;
>
> * * *
>
> (8) a person who has had actual possession and control of the child for at least six months immediately preceding the filing of the petition . . . . [Tex Fam Code Ann 11.03.]

Under Oregon law a person who has "established emotional ties creating a child-parent relationship with a child" may either intervene in a pending custody action or may petition for an order providing for custody, placement of the child, or visitation. Or Rev Stat 109.119(1). A "child-parent relationship" is defined as

> a relationship that exists or did exist, in whole or in part, within the six months preceding the filing of an action under this section, and in which relationship a person having physical custody of a child or residing in the same household as the child supplied, or otherwise made available to the child, food, clothing, shelter and incidental necessaries and provided the child with necessary care, education and discipline, and which relationship continued on a day-to-day basis, through interaction, companionship, interplay and mutuality, that fulfilled the child's psychological needs for a parent as well as the child's physical needs. [Or Rev Stat 109.119(4).]

parent who is not deprived of custody of the parent's minor and unemancipated child," including the power to consent to the child's marriage or adoption. MCL 700.431; MSA 27.5431.[16] Clearly, then, the explicit grant of standing to guardians in the act does not indicate that the Legislature concluded that third parties who do not have the status of a guardian also have standing to bring an original action for custody, and in fact suggests just the opposite.[17] Thus, just as the relatives of a child have no greater right to custody than any other person, by reason of their close biological relationship, neither do third parties attain a legal right to custody on the basis of the fact that a child has resided with them.

While neither the Child Custody Act nor any other authority of which we are aware gives a third party a right to legal custody of a child because the child resides with the third party, the Family Law Section of the State Bar of Michigan, as amicus curiae, urges this Court to create such a right. The Family Law Section suggests that the right should turn on an intricate balancing test based on both objective and subjective factors, including the length of time the child had resided

[16] A limited guardian has all the powers of a guardian, except that a limited guardian may not consent to the marriage or the adoption of the child. MCL 700.424a(6); MSA 27.5424(1)(6).

[17] The limitation placed on limited guardian standing also counsels against a holding that the Legislature intended that a third party has a legal right to custody and standing under the act on the basis of the fact that the child resides with the third party. As long as a parent substantially complies with a limited guardianship placement plan, the limited guardian may not bring an action for custody under the act, MCL 722.26b(2); MSA 25.312(6b)(2), and the probate court must terminate the limited guardianship upon the parent's petition and reintegrate the child into the parent's home. MCL 700.424c(3); MSA 27.5424(3)(3). These limitations on the limited guardian's ability either to petition for custody or oppose the termination of the guardianship exist without regard to the fact that during the guardianship a child may reside with the guardian rather than his parent.

with the third party, the intent of the parent and the third party in allowing the child to reside with the third party, the nature and frequency of the contact between the child and the parent during the time the child resides with the third party, and the age of the child. The Family Law Section would have a circuit court consider these factors to determine, case by case, whether a particular third party has a legal right to custody of a child, and therefore standing under the act to create a custody dispute.

We are mindful of the extensive writings with regard to parental rights, the "best interests of the child" standard, "psychological parents," and the arguments, pro and con, for creating third-party rights to custody.[18] We are also aware of the constitutional issues raised by the creation of third-party rights to custody.[19] However, we are not in a

---

[18] See, e.g., McCarthy, *The confused constitutional status and meaning of parental rights,* 22 Ga L R 975 (1988); Schoonmaker, *Constitutional issues raised by third-party access to children,* 25 Fam L Q 95 (1991); note, *Third party custody and visitation: How many ways should we slice the pie?,* 1989 Det Col L R 163; Morris, *Grandparents, uncles, aunts, cousins, friends: How is the court to decide which relationships will continue?,* 12 Fam Advocate 11 (1989); Gitlin, *Defining the best interest of children: Parents v others in custody proceedings,* 79 Ill B J 566 (1991); Symposium, *The impact of psychological parenting on child welfare decision-making,* 12 NYU R L & Social Change 485 (1983-84); Curtis, *The psychological parent doctrine in custody disputes between foster parents and biological parents,* 16 Colum J L & Social Problems 149 (1980).

See also Victor, *Statutory review of third-party rights regarding custody, visitation, and support,* 25 Fam L Q 19 (1991) (stating that "[s]ince there are no inherent rights of third parties to request custody or visitation of another person's child, it is incumbent on state legislatures to create such a right by the drafting and passing of legislation affecting children and third parties").

[19] See, generally, *Stanley v Illinois,* 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972); *Santosky v Kramer,* 455 US 745; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

See also *Smith v Organization of Foster Families for Equality and Reform,* 431 US 816, 846-847; 97 S Ct 2094; 53 L Ed 2d 14 (1977):

It is one thing to say that individuals may acquire a liberty

position to make such policy judgments, especially in light of the fact that the Legislature appears to have chosen a different course in its consideration of the competing interests involved. Therefore, we leave to the Legislature the task of creating substantive rights, subject to any constitutional restraints, if it finds that public policy so requires.

Further, to the extent that this Court's decision in *In re Weldon,* 397 Mich 225; 244 NW2d 827 (1976), is inconsistent with our holding in these cases and our decision in *Ruppel,* it is overruled. *Weldon* was a factually and procedurally complex case where third parties, with whom a child resided under color of a legal adoption placement, brought an action in circuit court under the Child Custody Act for legal custody of the child against the child's natural mother, who had successfully challenged in federal court the constitutionality of probate court proceedings terminating her parental rights. With only five justices participating,[20] the Court held that comity required recognition of the federal court decision that the mother's due process rights had been violated by the probate court parental termination proceedings. *Id.* at 239. The Court also reversed the circuit court's decision

interest against arbitrary governmental interference in the family-like associations into which they have freely entered, even in the absence of biological connection or state-law recognition of the relationship. It is quite another to say that one may acquire such an interest in the face of another's constitutionally recognized liberty interest that derives from blood relationship, state-law sanction, and basic human right—an interest the foster parent has recognized by contract from the outset. Whatever liberty interest might otherwise exist in the foster family as an institution, that interest must be substantially attenuated where the proposed removal from the foster family is to return the child to his natural parents.

[20] Justice WILLIAMS stated the holding of the Court. He concurred in part with Justice COLEMAN, joined by Justice FITZGERALD, and also concurred in part with Justice LEVIN, joined by Chief Justice T. G. KAVANAGH.

that the act did not apply to the facts of that case, and held that the "best interests of the child" should govern the circuit court's decision with regard to custody. *Id.* at 240.[21]

Justice COLEMAN concurred, concluding that because of the emphasis on the "best interests of the child" in the act, third parties with whom a child has resided under the color of a legal adoption placement could not be "elimin[ated] . . . from consideration for placement by the circuit court." *Id.* at 263. However, once the termination proceedings, upon which the adoption proceedings depended, were declared invalid, the third-party petitioners in *Weldon* had the same status as any other third parties with whom a child resides. Thus, the Court in *Weldon* gave the third-party petitioners standing to bring a custody action under the act despite the fact that the third parties did not have a legal right to custody of the child.

Therefore, the decision in *Weldon* is in conflict with our holding in *Ruppel* that the Child Custody Act does not create substantive rights of entitlement to legal custody of a child. Further, the decision in *Weldon* is also called into question by the Legislature's subsequent amendment of the act explicitly giving guardians, and not other third parties, standing to petition for custody. Because the *Weldon* decision, giving standing under the act to a third party who does not have a legal right of entitlement to the custody of a child, is inconsistent with *Ruppel* and our decision here, it is overruled.

Therefore, we reaffirm our holding in *Ruppel* that a third party cannot create a custody dispute

[21] Justice LEVIN dissented, arguing that "[t]he Child Custody Act does not require that the best interests of the child shall control where the dispute is between a parent and a third party." *Id.* at 293-294.

by simply filing a complaint in circuit court alleging that giving legal custody to the third party is in the best interests of the child. A third party does not have standing to create a custody dispute not incidental to divorce or separate maintenance proceedings[22] unless the third party is a guardian of the child or has a substantive right of entitlement to custody of the child. The Legislature has not created a substantive right to custody of a child on the basis of the child's residence with someone other than a parent, and this Court is not in a position to do so.

However, when a circuit court entertains an original action for custody by a party who does not have standing, the court errs in the exercise of jurisdiction, rather than taking action for which it is without jurisdiction.

> "Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked." [*Jackson City Bank & Trust Co v Fredrick,* 271 Mich 538, 545; 260 NW 908 (1935).]

V

We must next consider an issue not addressed by this Court in *Ruppel:* Whether the circuit court

---

[22] "While custody may be awarded to grandparents or other third parties according to the best interests of the child in an appropriate case (typically involving divorce)," *Ruppel, supra* at 565-566, such an award of custody is based not on the third party's legal right to custody of the child, but on the court's determination of the child's best interests.

has subject matter jurisdiction to hear an original petition for custody under the Child Custody Act where there is no dispute with regard to the custody of a child. While there is no question that the circuit courts have equitable jurisdiction to hear and decide custody *disputes,* we must determine whether a circuit court exceeds its jurisdiction when the court entertains an original action for custody, and makes an award of custody pursuant to that original action, where there is no dispute between the parties with regard to the custody of the child.

Although circuit courts are courts of general jurisdiction, with original jurisdiction to hear and determine all civil claims and remedies, circuit courts do not have jurisdiction in matters in which jurisdiction is given exclusively by constitutional provision or by statute to another court. MCL 600.605; MSA 27A.605. Circuit courts have all the power and jurisdiction possessed by English chancery courts in 1847, except "as altered by the constitution and laws of this state . . . ." MCL 600.601(2); MSA 27A.601(2). Therefore, we must determine whether the circuit court's traditional equitable jurisdiction over children has been altered by the constitution or by statute to the extent it would preclude an award of custody by consent in an original action under the Child Custody Act.

In *Sovereign, supra,* while this Court held that a circuit court retained its general and historic chancery power to hear and determine a custody dispute between the parents of a child who had been denied a divorce, we did not believe that "the circuit courts of Michigan sitting in chancery retain for all purposes the broad jurisdiction over children formerly exercised by the chancery courts." *Id.* at 94. For example, while the English

chancery courts, through their *parens patriae*
power, could appoint or remove a guardian of a
child,[23] MCL 700.21(c); MSA 27.5021(c) provides
that guardianship proceedings are *exclusively*
within the jurisdiction of the probate court.

The creation of a limited guardianship involves
a voluntary suspension of parental rights upon the
petition of the parent of a child. MCL 700.424a;
MSA 27.5424(1). The parent must consent to the
appointment of the limited guardian and must
consent to a suspension of parental rights, and the
court must approve a placement plan agreed to by
both the parent and the limited guardian. *Id.* The
placement plan includes such provisions as the
reason the parent seeks the appointment of the
limited guardian, the visitation and contact the
parent will have with the child during the guard-
ianship, and the financial support that will be
provided by the parent. *Id.* Through the guardian-
ship provisions of the Probate Code, the Legisla-
ture has enacted a detailed statutory scheme gov-
erning the voluntary suspension of parental rights
and transfer of such rights to a limited guardian.

In contrast to the guardianship provisions, the
Child Custody Act governs the resolution of *dis-
putes* between one or more parties claiming a
right to the custody of a child. The act provides
that in all actions

> filed in a circuit court involving *dispute of custody*
> of a minor child, the court shall declare the inher-
> ent rights of the child and establish the rights and
> duties as to custody, support and visitation of the
> child in accordance with this act. [MCL 722.24;
> MSA 25.312(4). Emphasis added.]

---

[23] See 3 Story, *supra,* § 1754, p 371; 4 Pomeroy, *supra,* § 1306, p 873.

The act further provides:

> (1) If a child *custody dispute* has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may:
>
> (a) Award the custody of the child to 1 or more of the parties involved or to others and provide for payment of support . . . . [MCL 722.27; MSA 25.312(7). Emphasis added.]

Finally, in *Ruppel* we held that the act

> creates presumptions and standards by which *competing claims* to the right of custody are to be judged, sets forth procedures to be followed in *litigation* regarding such claims, and authorizes the forms of relief available in the circuit court. [*Ruppel, supra* at 565. Emphasis added.]

By enacting the Child Custody Act, the Legislature standardized the criteria for resolving child custody disputes by requiring the circuit court to evaluate eleven factors in making its determination of the best interests of a child. *Baker v Baker,* 411 Mich 567, 576; 309 NW2d 532 (1981). Before enactment of the Child Custody Act, a circuit court's exercise of its discretion in determining the best interests of a child was "virtually unfettered." *Id.* It is clear that the act was intended to provide a framework for the resolution of *disputes* with regard to the custody of a child.

However, a comparison of the guardianship provisions of the Probate Code and the Child Custody Act persuades us that the act was not intended to be used as a means to "legalize" voluntary transfers of physical custody of a child from a parent to a third party. The guardianship provisions set forth detailed procedures whereby a parent may voluntarily consent to the suspension of parental

rights and request the appointment by the probate
court of a limited guardian for the parent's child.
The limited guardianship placement plan, required
by statute, protects the child's best interests by
requiring the parent to maintain a relationship
with the child and provides notice to the parent
that "substantial failure to comply with the plan
without good cause may result in the termination
of the parent's parental rights . . . ." MCL
700.424a(2); MSA 27.5424(1)(2). The guardianship
statutes permit periodic review by the probate
court, with annual review required if the child is
under six years of age, MCL 700.424b(1); MSA
27.5424(2)(1), and annual reports by the guardian
pursuant to court rule, MCL 700.431(1)(d); MSA
27.5431(1)(d).[24] Further, the guardianship provi-
sions protect the parent's interests by allowing the
parent to terminate the arrangement and summon
the child home if the parent has substantially
complied with the placement plan. See MCL
700.424a(5); MSA 27.5424(1)(5).

In contrast, the Child Custody Act refers repeat-
edly to the bringing of an "action" for custody and
to the resolution of "disputes" with regard to
custody. Once the circuit court takes jurisdiction
over a child and issues an order pursuant to the
act, the court's jurisdiction continues until the
child is eighteen years old, MCL 722.27(1)(c); MSA
25.312(7)(1)(c); however, the act does not provide
for periodic court review, nor does it require an-
nual reports to the circuit court by the child's
custodian. Further, unlike the guardianship provi-
sions, the act emphasizes the maintenance of an
established custodial environment, even if the
child resides with a third party rather than a
parent. See MCL 722.27(1)(c); MSA 25.312(7)(1)(c).

[24] MCR 5.769 requires a guardian to file a written report annually
and at other times pursuant to court order.

We find it clear that the Legislature never intended to regulate voluntary transfers of legal custody through application by the circuit courts of the dispute resolution criteria of the Child Custody Act. Nor did the Legislature intend the circuit courts to exercise their traditional equitable jurisdiction to hear and resolve custody disputes in order to "rubber stamp" such voluntary transfers of custody. Instead, the Legislature enacted specific and detailed legislation governing the voluntary suspension of parental rights through guardianship proceedings, and placed such proceedings exclusively within the jurisdiction of the probate court.[25] We hold, then, that a circuit court exceeds its subject matter jurisdiction when, in an original action pursuant to the Child Custody Act, it enters an order transferring custody from a parent to a third party where there is no dispute between the parent and the third party with regard to the custody of the child.

## VI

In *Bowie v Arder,* the circuit court incorrectly concluded that it was without subject matter jurisdiction to hear and determine Darresia Bowie's petition for custody. Darresia's petition, and Milton Arder's answer to her petition, indicate that there was a bona fide dispute between the parties with regard to Ashlee's custody. However, the

[25] We reach the same conclusion with regard to a parent's attempt to voluntarily relinquish, as opposed to merely suspend, all parental rights pursuant to the act. Adoption in this state is purely statutory, *In re Draime,* 356 Mich 368, 370; 97 NW2d 115 (1959), and the voluntary relinquishment of parental rights is governed exclusively by the Adoption Code. MCL 710.21 *et seq.*; MSA 27.3178(555.21) *et seq.* The Child Custody Act is not a substitute for the procedures and requirements of the Adoption Code where an adoption by consent is not possible because the child is not related within the fifth degree to the prospective adoptive parents. See MCL 710.43(1)(a)(v); MSA 27.3178(555.43)(1)(a)(v).

circuit court could have based its dismissal on the fact that Darresia Bowie did not have standing to bring an action for custody under the Child Custody Act. Darresia was not Ashlee's guardian or limited guardian at the time she filed the action. Nor did she attain a right to legal custody of Ashlee because the child resided with her after Carolyn Bowie's death. Therefore, we affirm the circuit court's dismissal of the original third-party custody action in *Bowie v Arder.*

In *Duong v Hong,* the original third-party action for custody, filed by Mike Yang and Tuyet Trieu in June of 1982, alleged that awarding the non-parents custody of Kaye Star Hong would be in the best interests of the child. Rather than disputing the claims in the petition for custody, Long Han Hong and Phan Hue Ong signed a stipulation to the entry of an order granting Mike and Tuyet custody of Kaye Star Hong and giving Long and Phan reasonable rights of visitation. The circuit court entered the order without holding a hearing and without the parties ever appearing before the court.

While the parties in *Duong v Hong* disagree with regard to their intentions in allowing Mike and Tuyet to have custody of Kaye Star, and with regard to how long the arrangement was intended to last, it is clear that at the time the order was entered in 1982 there was *no dispute* between the parties with regard to the custody of the child. The parties agree that their intention was to "legalize" the informal arrangement they had made allowing Kaye Star to reside with Mike and Tuyet. As we have held, the circuit court's equitable jurisdiction over children who are the subject of custody disputes does not allow the court to "rubber stamp" a voluntary transfer of legal custody from a parent to a third party pursuant to the dispute-resolution

provisions of the Child Custody Act. The proper forum for the voluntary suspension of parental rights is the probate court, to which the Legislature has given exclusive jurisdiction over guardianship proceedings.

Although Long and Phan did not move to vacate the original custody order and all subsequent orders until September 18, 1990, their delay does not prevent their recovery. The jurisdiction of a court arises by law, not by the consent of the parties. *Straus v Barbee,* 262 Mich 113, 114; 247 NW 125 (1933). Parties cannot give a court jurisdiction by stipulation where it otherwise would have no jurisdiction. *Shane v Hackney,* 341 Mich 91, 98; 67 NW2d 256 (1954). When a court lacks subject matter jurisdiction to hear and determine a claim, any action it takes, other than to dismiss the action, is void. *Fox v Univ of Michigan Bd of Regents,* 375 Mich 238, 242; 134 NW2d 146 (1965). Further, a court must take notice of the limits of its authority, and should on its own motion recognize its lack of jurisdiction and dismiss the action at any stage in the proceedings. *Id.*

Thus, while an error in the exercise of a court's jurisdiction is not subject to collateral attack, want of jurisdiction renders a judgment void. *Jackson City Bank & Trust, supra.* The circuit court in *Duong v Hong* should have taken notice of its lack of jurisdiction and should have dismissed the original custody petition. Any action the court took other than dismissing the action was void for want of subject matter jurisdiction.

The nonparents argue, however, that even if jurisdiction was lacking when the circuit court entered the original custody order giving them legal custody of Kaye Star, the court did not lack jurisdiction in 1985 when it entered an order continuing custody of the child with the non-

parents. The 1985 order was the result of a peti-
tion for change of custody filed by Long and Phan,
and it is clear that by this point there was a
dispute between the parties with regard to the
custody of Kaye Star. Thus, the nonparents argue,
the circuit court did not exceed its subject matter
jurisdiction by hearing and determining the par-
ent's petition for a change of custody pursuant to
the Child Custody Act.

We cannot agree with the nonparents' reason-
ing. In order for Long and Phan to attempt to
regain custody of their child, a petition for a
change of custody pursuant to the act was necessi-
tated by the circuit court's original order awarding
legal custody to Mike and Tuyet. We cannot hold
that the original custody order is null and void,
but uphold the subsequent custody order that was
dependent upon it, without gross speculation with
regard to what action the parties would have
taken had the circuit court properly dismissed the
original action for want of jurisdiction.

Had the parties merely continued the informal
arrangement, Long and Phan may have indeed
filed a subsequent action for custody in the circuit
court, over which the circuit court would have had
jurisdiction if there was a bona fide dispute be-
tween the parties with regard to the child's cus-
tody at that time. However, had Long and Phan
instead sought the appointment of Mike and Tuyet
as limited guardians for Kaye Star, a petition for
custody or for a change of custody would not have
been necessary. We cannot say what would have
happened had the circuit court not exceeded its
jurisdiction, and we cannot base our decision on
action taken by the circuit court that may not
have been taken had the court not erred in the
entry of its original order. Thus, we hold that the
original order awarding custody of Kaye Star to

Mike and Tuyet and all subsequent orders entered by the circuit court with respect to the custody of Kaye Star are void for want of subject matter jurisdiction.

Because all circuit court orders with respect to the custody of Kaye Star are without force and effect, Long and Phan were never effectively deprived of legal custody of their daughter. However, Mike and Tuyet now have physical custody of the child. Thus, it appears that the parents may attempt to secure relief through a new cause of action pursuant to the Child Custody Act. Long and Phan clearly have standing to petition for physical custody of their child, and the circuit court would have jurisdiction to decide the case because of the bona fide dispute between the parties with regard to the custody of Kaye Star.

We caution, however, that because of the unusual circumstances of this case, in any such new cause of action the circuit court must take into account the inequitable and unfortunate result of the court's jurisdictional error at the commencement of the original action for custody filed by the nonparents. Should Long and Phan choose to file a new action under the act, special care must be taken to rectify, if possible, the damage visited upon them by the circuit court's previous orders entered in error. Thus, in the interest of judicial economy, we urge that the factors to be considered under the act, especially with respect to the continuity of the child's living environment, MCL 722.23(d); MSA 25.312(3)(d), be tempered by the fact that the parents were deprived of an opportunity to have their interests properly adjudicated.

Thus, we affirm the decision of the Court of Appeals in *Bowie v Arder,* and reverse the decision of the Court of Appeals in *Duong v Hong,* and

pursuant to MCR 7.316(7), we order that the status quo with respect to the custody of Kaye Star be maintained for a period of ninety days from the date of the issuance of the judgment order, or until jurisdiction is vested in an appropriate court pursuant to a newly initiated cause of action, whichever occurs first. We remand to the circuit court for the monitoring and enforcement of this order.

CAVANAGH, C.J., and BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BRICKLEY, J.

LEVIN, J. (*separate opinion*). I am not persuaded that the Legislature has deprived the circuit courts of subject matter jurisdiction of these controversies, or that any of the parties lack standing to maintain an action concerning custody.*

---

* See *Ruppel v Lesner,* 421 Mich 559, 567-570; 364 NW2d 665 (1984).