*In re* CLAUSEN

(DeBOER v SCHMIDT)

Docket No. 161102. Submitted March 4, 1993, at Lansing. Decided March 29, 1993, at 9:00 A.M. Leave to appeal granted, 442 Mich —.

Roberta and Jan DeBoer, who as prospective adoptive parents in proceedings in the trial and appellate courts of Iowa lost temporary guardianship and custody of a child born to Cara Clausen, petitioned the Washtenaw Circuit Court pursuant to the Uniform Child Custody Jurisdiction Act for modification of an Iowa court order granting guardianship and custody of the child to Daniel Schmidt, the child's biological father.

Cara Clausen, unwed at the time of the child's birth, had named Scott Seefeldt as the child's father. Clausen and Seefeldt relinquished custody before the DeBoers petitioned for adoption in an Iowa juvenile court. Clausen then sought to revoke her release of custody, and Schmidt intervened to assert that he was the father of the child. Following appeals in the Iowa Court of Appeals and the Iowa Supreme Court, Clausen's parental rights were reinstated, Schmidt was declared the child's father, and the DeBoers' temporary guardianship and custody were terminated and they were ordered to turn the child over to Schmidt.

The Washtenaw Circuit Court, William F. Ager, Jr., J., issued an ex parte order restraining Schmidt, who had contended that the Washtenaw Circuit Court was without jurisdiction, from removing the child from Washtenaw County, and denied him summary disposition. The Michigan Court of Appeals denied Schmidt leave to appeal. The Michigan Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 441 Mich 930 (1993).

On remand, the Court of Appeals *held:*

REFERENCES

Am Jur 2d, Divorce and Separation § 963; Infants § 33.

Jurisdiction acquired by court in divorce suit over custody and maintenance of child as excluding jurisdiction of other local courts, or as rendering its exercise improper. 146 ALR 1153.

1. The Washtenaw Circuit Court lacked jurisdiction to intervene in this case. Pursuant to § 656(1) of the UCCJA, MCL 600.656(1); MSA 27A.656(1), Michigan is precluded from exercising jurisdiction if a matter concerning custody of the child in question is pending in another state at the time the petition to modify an order is filed in Michigan. An adoption proceeding is a custody proceeding for purposes of the UCCJA. In this case, further proceedings in Iowa concerning the child were pending at the time the DeBoers filed their petition in the Washtenaw Circuit Court.

2. Even if the Washtenaw Circuit Court had jurisdiction, the DeBoers lacked standing to initiate a custody action. After the DeBoers were stripped of their temporary guardianship and custody of the child in the proceedings in Iowa, they became third parties with respect to the child. Neither the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, nor any other authority, including the UCCJA, grants standing to initiate a custody dispute to third parties who do not possess a substantive right of custody or guardianship.

3. Schmidt is not entitled to attorney fees or costs pursuant to § 658(3) of the UCCJA, MCL 600.658(3); MSA 27A.658(3), in the absence of reprehensible conduct by the DeBoers.

Reversed and remanded.

1. COURTS — CIRCUIT COURTS — SUBJECT-MATTER JURISDICTION —
   CHILD CUSTODY — UNIFORM CHILD CUSTODY JURISDICTION ACT.

   A circuit court is precluded from exercising jurisdiction in a child custody dispute where at the time of the filing of a petition a proceeding concerning the custody of the child is pending in a court of another state; a pending adoption proceeding in another state is considered a proceeding concerning the custody of the child (MCL 600.656[1]; MSA 27A.656[1]).

2. PARTIES — CHILD CUSTODY — THIRD PARTIES — STANDING — CHILD
   CUSTODY ACT — UNIFORM CHILD CUSTODY JURISDICTION ACT.

   Third parties who do not possess a substantive right of custody or guardianship lack standing under the Child Custody Act or the Uniform Child Custody Jurisdiction Act to initiate a custody dispute (MCL 600.651 *et seq.*; 722.21 *et seq.*; MSA 27A.651 *et seq.*; 25.312[1] *et seq.*).

Child Advocacy Law Clinic (by *Suellyn Scarnecchia*), for the petitioners.

*Faupel & Associates* (by *Marian L. Faupel*), for the respondent.

Before: Michael J. Kelly, P.J., Marilyn Kelly and Connor, JJ.

Per Curiam. This case has been remanded to this Court for consideration as on leave granted. 441 Mich 930 (1993). Respondent Daniel Schmidt appeals from an order entered on January 11, 1993, by the Washtenaw Circuit Court denying his motion for summary disposition and to dissolve a preliminary injunction. We reverse.

This highly publicized case concerns a dispute over the rights to a child. On February 8, 1991, Baby Girl Clausen (BGC) was born to Cara Clausen in Iowa. On February 10, 1991, Clausen signed a release-of-custody form relinquishing her parental rights to BGC. Clausen, who was unmarried at the time of the birth (but who married Daniel Schmidt in April 1992), had named Scott Seefeldt as the father. On February 14, 1991, Seefeldt executed a release-of-custody form.

On February 25, 1991, petitioners Roberta and Jan DeBoer, who are Michigan residents, filed a petition for adoption of BGC in juvenile court in Iowa. A hearing was held the same day. Cara Clausen received notice of, but did not attend, the hearing. At the hearing, the parental rights of Cara Clausen and Scott Seefeldt were terminated, and petitioners were granted custody of BGC. The DeBoers returned to Michigan with BGC. The child has lived with the DeBoers in Michigan continuously since that time.

On March 6, 1991, Cara Clausen filed a request in the Iowa juvenile court to revoke her release of custody. In an affidavit accompanying the request, Clausen stated that she had lied when she named Seefeldt as the biological father of BGC and that the child's biological father was Daniel Schmidt. Schmidt filed an affidavit of paternity on March

12, 1991. At a hearing in juvenile court attended by Clausen and the DeBoers, the court dismissed Clausen's request to revoke her release of custody on the ground that it lacked subject-matter jurisdiction because a petition for adoption had been filed. The court also dismissed Schmidt's attempt to claim custody. The DeBoers and BGC returned to Michigan.

On March 27, 1991, Schmidt filed a petition in the district court in Iowa, seeking to intervene in the adoption proceeding initiated by the DeBoers. He asserted that he had not given consent for the adoption. Doubting Clausen's truthfulness, the De-Boers denied that Schmidt was the natural father of the child. The court ordered blood tests. The DeBoers objected and, as a result, it was not until September 1991 that the test results were available. They showed a 99.9 percent probability that Schmidt was the father of BGC, and a zero percent probability that Seefeldt was the father. On September 24, 1991, the DeBoers filed a petition in the Iowa district court to terminate Schmidt's parental rights. They alleged that Schmidt was an unfit parent because he had abandoned BGC and two other children, born several years earlier.

On November 4, 1991, the district court in Iowa conducted a bench trial with regard to the issues of paternity, termination of parental rights, and adoption. In findings of fact, conclusions of law, and a decree entered on December 27, 1991, the district court found that Schmidt established by a preponderance of the evidence that he was the biological father of BGC, that the DeBoers failed to establish by clear and convincing evidence that Schmidt had abandoned the child or that his parental rights should be terminated, and that a "best interests of the child" analysis did not become material unless and until abandonment was

established. On the basis of these findings, the court concluded that the termination proceeding was void with respect to Schmidt and that the DeBoers' petition to adopt BGC must be denied. The court ordered that the DeBoers return physical custody of the child to Schmidt no later than January 12, 1992, at 6:00 P.M. The court retained jurisdiction under its general equitable powers in order to complete any matters necessary to protect the interests of BGC.

In the meantime, the Iowa Court of Appeals reversed the termination of Cara Clausen's parental rights and remanded the case to juvenile court for further proceedings. The Iowa Supreme Court granted further review of that decision.

The DeBoers appealed the district court's decision to the Iowa Supreme Court. The Supreme Court stayed the district court's order changing physical custody of BGC. The Supreme Court consolidated its review of the Court of Appeals decision concerning Cara Clausen's parental rights with the appeal filed by the DeBoers. In a decision filed on September 23, 1992, the Supreme Court affirmed both decisions. The Supreme Court rejected the DeBoers' argument that a "best interests of the child" analysis governed the issue of termination in an adoption case, and found that because termination of parental rights was governed by statute, statutory grounds for termination must be established before reaching a determination of the child's best interests. The Supreme Court held that the district court correctly concluded that the DeBoers' petition for adoption should be dismissed.

On November 20, 1992, the Supreme Court denied the DeBoers' motion for reconsideration and remanded the case to the district court for issuance of an order changing physical custody of BGC

from the DeBoers to Schmidt. The district court ordered the DeBoers to appear on December 3, 1992, with BGC. The DeBoers did not appear at the hearing; instead, their Iowa attorney informed the court that the DeBoers had received actual notice of the hearing, but had decided not to appear. In an order entered on December 3, 1992, the district court terminated the DeBoers' rights as temporary guardians and custodians of BGC, and, to the extent necessary, appointed Schmidt as temporary guardian and custodian until further order of the court. Schmidt was given authority to proceed by any legal means to enforce the order requiring the DeBoers to relinquish possession of the child. The court found that the DeBoers had no legal right or claim to physical custody of the child and that they were acting outside any legal claim to custody or possession of the child. The court scheduled a hearing for December 18, 1992, for the DeBoers to show cause why they should not be held in contempt.[1] The court also found that the DeBoers should be assessed attorney fees and costs.

In Michigan, on December 3, 1992, the same day the DeBoers' rights were terminated in Iowa, they filed a petition in Washtenaw Circuit Court pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), MCL 600.651 *et seq.*; MSA 27A.651 *et seq.* The petition sought modification of the Iowa order granting custody of BGC to Schmidt. The DeBoers argued that Michigan had jurisdiction under the UCCJA because BGC had resided in Michigan for all but approximately three weeks of her life, and Michigan was the home state of BGC as that term was defined by the UCCJA. The petition alleged

---

[1] That hearing, held on January 22, 1993, resulted in the DeBoers being held in contempt of court and bench warrants being issued for their arrest.

that it would be in the best interests of BGC for Michigan to assume jurisdiction. On December 3, 1992, the Washtenaw Circuit Court entered an ex parte order entitled "preliminary injunction," which ordered Schmidt not to remove BGC from Washtenaw County.

On December 11, 1992, Schmidt filed a motion for summary disposition, to dissolve the preliminary injunction, and to recognize and enforce the Iowa judgment in the instant case. The Washtenaw Circuit Court held a hearing regarding Schmidt's motion on January 5, 1993. Schmidt argued that to grant the relief requested by the DeBoers, modification of the Iowa order, the Washtenaw Circuit Court would have to ignore the constitutional right of a parent to develop a relationship with a child and Cara Clausen's right under Iowa law to a seventy-two-hour waiting period before parental rights can be released (Clausen had executed a form releasing her rights approximately forty-eight hours after BGC was born). Schmidt contended that pursuant to *Bowie v Arder*, 441 Mich 23; 490 NW2d 568 (1992), the DeBoers lacked standing to initiate a custody dispute. The DeBoers argued that Michigan had jurisdiction under the UCCJA and that the court should consider the best interests of the child before making a decision. The DeBoers stated that they were seeking a decision that balanced the Iowa decision with the best interests of BGC, and contended that the child's best interests were not considered in the Iowa proceedings. The DeBoers asserted that because they had filed their petition under the UCCJA, they did not have to establish that they met the standing requirement of the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.* Therefore, *Bowie, supra,* did not preclude consideration of their petition.

The Washtenaw Circuit Court found that it had jurisdiction to determine the best interests of BGC. The court denied Schmidt's motion for summary disposition, and directed that BGC was to remain with the DeBoers until further order. The court entered a written order on January 11, 1993.

Initially, this Court denied Schmidt's application for leave to appeal for failure to persuade of the need for immediate appellate review. In an order entered on February 4, 1993, our Supreme Court remanded the case for consideration as on leave granted.

The best-interests determination began in Washtenaw Circuit Court on January 29, 1993, and continued for several days. During the course of the hearing, the parties learned that in Iowa, Cara Clausen's release of custody of BGC and waiver of parental rights had been set aside. In a decision rendered from the bench on February 12, 1993, the Washtenaw Circuit Court found that it was in the best interests of BGC for her to remain with the DeBoers. That decision is *not* at issue in the instant appeal.

### JURISDICTION

On appeal, Schmidt argues that the Washtenaw Circuit Court lacked jurisdiction to intervene in this case because the Iowa decision was not a judgment regarding custody but rather was a judgment regarding adoption. He contends that as a natural parent he has a constitutional right to custody of his child absent a determination that he is an unfit parent (a proposition with which the Iowa court agreed), and that no analysis, including a "best interests of the child" analysis, can override that right. *Stanley v Illinois,* 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972). Schmidt asserts

that pursuant to the Full Faith and Credit Clauses in both the United States Constitution, US Const, art IV, § 1, and the UCCJA, MCL 600.663; MSA 27A.663, the Washtenaw Circuit Court was obligated to recognize and enforce the valid judgment from Iowa. Iowa exercised jurisdiction, entered a judgment, and retained jurisdiction. Iowa has continued to exercise jurisdiction throughout, even to holding the DeBoers in contempt of court.

We find that the Washtenaw Circuit Court lacked jurisdiction to intervene in this case. The UCCJA has been enacted by every state, including Michigan. See 1975 PA 297. Its primary purpose is to avoid jurisdictional competition between states by establishing uniform rules for deciding when states have jurisdiction to make child custody determinations. MCL 600.651; MSA 27A.651. Pursuant to § 656(1) of the UCCJA, MCL 600.656(1); MSA 27A.656(1), Michigan is precluded from exercising jurisdiction if a matter concerning custody is pending in another state at the time the petition to modify is filed in this state. See *Moore v Moore,* 186 Mich App 220, 226; 463 NW2d 230 (1990). An adoption proceeding is included in the definition of a custody proceeding under the UCCJA. MCL 600.652(c); MSA 27A.652(c). *Foster v Stein,* 183 Mich App 424, 430; 454 NW2d 244 (1990). The DeBoers filed their petition in Washtenaw Circuit Court on December 3, 1992. On that date, the Iowa district court entered an order terminating the DeBoers' rights as temporary guardians and custodians of BGC, and scheduled a hearing for the DeBoers to show cause why they should not be held in contempt. Although the issues concerning the dismissal of the DeBoers' adoption petition and the right to physical custody of BGC had been determined by the Iowa Supreme Court before December 3, 1992, further proceedings were sched-

uled in the case. Under § 656(1) of the UCCJA, the Washtenaw Circuit Court was precluded from intervening in this case, and was obligated to recognize and enforce the Iowa order of December 3, 1992. US Const, art IV, § 1; MCL 600.663; MSA 27A.663.

We find that the DeBoers' contention that a Michigan court could modify the Iowa order because Iowa did not act substantially in conformity with the UCCJA by doing a "best interests of the child" analysis is without merit. The Iowa court dismissed the adoption petition and granted custody of BGC to Schmidt because he was the biological father of the child and because his parental rights had not been terminated. The Iowa court found that Iowa statutes and case law did not require the type of best interests analysis sought by the DeBoers in Michigan unless statutory grounds for termination had been established.

### STANDING

Schmidt asserts that even assuming arguendo that the Washtenaw Circuit Court properly assumed jurisdiction, the DeBoers have no standing as third parties to initiate a custody action.

We hold that the DeBoers lacked standing to bring this action in Washtenaw Circuit Court. The Iowa district court order of December 3, 1992, implemented the decision of the Iowa Supreme Court and stripped the DeBoers of any legal claim to custody of BGC. The grant of temporary custody was rescinded. At that time, the DeBoers became third parties with respect to BGC, and no longer had a basis on which to claim a substantive right to custody. *Bowie, supra* at 43-45, 49, states that neither the Child Custody Act nor "any other authority" gives standing to create a custody dis-

pute to a third party who does not possess a substantive right to custody or is not a guardian. A right to legal custody cannot be based on the fact that a child resides or has resided with the third party. We take the reference in *Bowie, supra* at 45, to "any other authority" to include the UCCJA.

The DeBoers' argument that *Bowie, supra,* does not apply to this case is without merit. As noted, the pronouncement in *Bowie, supra,* regarding the standing of third parties to create custody disputes is expressly not limited to actions brought under the Child Custody Act. Moreover, contrary to the DeBoers' assertions, they have created a custody dispute by filing a petition in Washtenaw Circuit Court. The Iowa Supreme Court decision, implemented by the Iowa district court's order of December 3, 1992, dismissed the DeBoers' petition to adopt BGC and rescinded their status as temporary guardians and custodians. The DeBoers had no further legal rights to BGC. The DeBoers have attempted to use the UCCJA and the Washtenaw Circuit Court to create anew a right that the Iowa courts had extinguished. The DeBoers initiated a custody dispute in this state. Pursuant to *Bowie, supra,* they had no standing to do so. To disavow *Bowie* in this case would give an advantage to third parties in interstate custody disputes that is not enjoyed by third parties in intrastate disputes.

The DeBoers' reliance on *In re Danke,* 169 Mich App 453; 426 NW2d 740 (1988), and *In re Weldon,* 397 Mich 225; 244 NW2d 827 (1976) (cases in which third parties with no legal right to custody were granted standing to bring a custody action), is misplaced. Both cases were decided before *Bowie, supra.* The *Bowie* Court specifically stated that *Weldon, supra,* was overruled, and that a third party could not gain standing simply by filing a complaint and asserting that a change in

custody would be in the best interests of the child. *Bowie, supra* at 48-49.

Our decision on the issues of jurisdiction and standing make it unnecessary to address Schmidt's argument that the preliminary injunction entered by the Washtenaw Circuit Court suspended his parental rights without due process of law, and that its continued enforcement deprives him of a constitutional right to develop a meaningful relationship with BGC.

The Iowa order of December 3, 1992, awarded Schmidt costs and attorney fees. Schmidt notes in his brief on appeal that both MCL 750.350a; MSA 28.582(1), the parental kidnapping statute, and MCL 600.658(3); MSA 27A.658(3) allow an award of attorney fees. MCL 600.658(3); MSA 27A.658(3) allows such an award if a petition filed under the UCCJA is dismissed because of "reprehensible" conduct by the petitioner. We do not find the DeBoers' conduct reprehensible under the UCCJA, or that it violated the parental kidnapping statute. Therefore, we decline to make an award of attorney fees and costs in this case, or to remand the case to the Washtenaw Circuit Court for a hearing with regard to the issue.

The Washtenaw Circuit Court's denial of Schmidt's motion for summary disposition and to dissolve the injunction is reversed. We find that the Iowa order of December 3, 1992, must be enforced, and that the custody of the child must be transferred to her father, Daniel Schmidt. The transfer of custody is stayed for twenty-one days from the date of the certification of this opinion to afford the parties an opportunity to appeal. This matter is remanded to the Washtenaw Circuit Court for proceedings consistent with this decision. We do not retain jurisdiction.

Reversed and remanded.