MARKMAN, J.
(concurring). At issue here is the subject-matter jurisdiction of the district court, which is exclusive in “civil actions when the amount in controversy does not exceed $25,000.00.” MCL 600.8301(1). I join the majority because I agree that “amount in controversy” as used in MCL 600.8301(1) refers to the “prayer for relief set forth in the plaintiffs pleadings . ...” I further agree that a trial court may be ousted of subject-matter jurisdiction when “fraud upon the court is apparent” from pleadings made in “bad faith.” I write separately only to identify circumstances that, in my view, might raise questions concerning “bad faith” pleading and thereby warrant dismissal of a case for lack of jurisdiction. While *225 bad-faith pleadings are rare, when these do occur, they undermine the law of our state and the integrity of our judicial process, and they give rise to conditions at trial in which a party may be unfairly prejudiced.
I. FACTS AND HISTORY
This case arose when plaintiff sued defendant in the 36th District Court for first-party no-fault benefits after plaintiff had been struck by a vehicle driven by a person insured by defendant. Plaintiffs complaint alleged bodily injury, including a “closed head injury,” “pains in left shoulder, back, neck area, [and] lower back,” and a “bruise on [the] left ankle.” She also alleged financial injury, including “expenses for care, recovery, or rehabilitation,” “loss of wages,” “replacement services,” and “attendant care.” In her complaint’s prayer for relief, plaintiff sought “damages in whatever amount Plaintiff is found to be entitled not in excess of 25,000.00 . . . .” The parties then engaged in discovery, and, based on information provided by plaintiff, defendant estimated that plaintiffs claim was worth nearly $250,000. As a result, defendant filed a motion in limine to prevent plaintiff from offering at trial evidence that her claim exceeded $25,000, but the district court denied that motion. Plaintiff eventually submitted evidence at trial of injuries exceeding $25,000, including more than $150,000 in attendant-care services. The jury returned a verdict of $85,957, which the district court duly reduced to $25,000.
Defendant appealed in the Wayne Circuit Court, arguing that the district court lacked subject-matter jurisdiction. The circuit court concluded that plaintiff claimed damages exceeding $25,000 and thus reversed the district court. Plaintiff then appealed in the Court of Appeals. After we directed that Court to consider the *226 case as on leave granted, it agreed with the circuit court, concluding that the district court had been divested of jurisdiction when plaintiff “presented evidence of damages far exceeding [its] $25,000 subject-matter jurisdiction.” Moody v Home Owners Ins Co, 304 Mich App 415, 431; 849 NW2d 31 (2014). We then granted leave to appeal on two issues:
(1) whether a district court is divested of subject-matter jurisdiction when a plaintiff alleges less than $25,000 in damages in his or her complaint, but seeks more than $25,000 in damages at trial, i.e., whether the “amount in controversy” exceeds $25,000 under such circumstances, see MCL 600.8301(1); and, if not, (2) whether such conduct nevertheless divests the district court of subject-matter jurisdiction on the basis that the amount alleged in the complaint was made fraudulently or in bad faith. [Hodge v State Farm Mut Auto Ins Co, 497 Mich 957, 957-958 (2015).]
II. ANALYSIS
I agree with the majority’s analysis of the two issues on which this Court granted leave. I write separately only to elaborate on my views as to the second issue— under what circumstances may a prayer for relief, although nominally falling within the district court’s statutory “amount in controversy” requirement, nonetheless clearly exhibit bad faith and thereby warrant dismissal.[1] In my view, the relevant jurisdictional inquiry does not automatically come to an end when a plaintiff evidences a willingness to accept an amount *227 less than the jurisdictional maximum; rather, particular circumstances may warrant a district court’s inquiring more deeply into whether the amount in controversy was, at the time it was alleged, alleged in bad faith.[2]1 emphasize that bad-faith pleadings to obtain subject-matter jurisdiction have been extraordinarily rare—indeed this and the two cases mentioned in note 3 of this opinion are the first brought to this Court’s attention during my tenure, and I believe further inquiry in this regard must be undertaken.[3] For the reasons set forth below, however, I believe it is important that it be made clear, for the integrity of both the legislative and judicial branches, that this Court will not tolerate cases or controversies that ought to be heard in one court being heard in another as a result of a bad-faith pleading.
A. BAD FAITH
Subject-matter jurisdiction “is the power to hear and determine a cause or matter.” Bowie v Arder, 441 Mich 23, 36; 490 NW2d 568 (1992) (quotation marks and citation omitted). Because a court has no inherent subject-matter jurisdiction, such jurisdiction must be *228 “conferred upon [the court] by the power which creates it.” Detroit v Rabaut, 389 Mich 329, 331; 206 NW2d 625 (1973). Jurisdiction accordingly “arises by law,” and a court must, notwithstanding a party’s stipulation, consent, or waiver, “take notice of the limits of its authority” in order to safeguard the integrity of the judicial process by ensuring that it does not exercise authority it does not have. Bowie, 441 Mich at 56. Hence, if the court “recognize [s] its lack of jurisdiction,” it must “act accordingly by staying proceedings, dismissing the action, or otherwise disposing thereof, at any stage of the proceeding.” Fox v Bd of Regents of Univ of Mich, 375 Mich 238, 242; 134 NW2d 146 (1965) (quotation marks and citation omitted); accord Straus v Governor, 459 Mich 526, 532; 592 NW2d 53 (1999) (“[A] court at all times is required to question sua sponte its own jurisdiction . .. .”) (quotation marks and citation omitted).
This Court has long recognized that when a plaintiffs pleadings are clearly made in bad faith for the purpose of satisfying a trial court’s subject-matter jurisdiction, the trial court is ousted of jurisdiction and must dismiss the matter. See Fix v Sissung, 83 Mich 561, 563; 47 NW 340 (1890). Fix concerned a dispute between neighbors stemming from a gaggle of the plaintiffs geese “trespassing” on the defendant’s property. The defendant took possession of the geese and refused to return them unless the plaintiff first paid for property damage caused by the geese and for the cost of feeding them. The plaintiff then sued the defendant in the circuit court for return of the geese. The defendant moved to dismiss for lack of subject-matter jurisdiction, arguing that because the geese were worth less than $100, only a state justice of the peace could hear the case.[4] The plaintiff re *229 sponded with a declaration that the geese were worth $200, and the trial court permitted the case to proceed. However, it also warned the plaintiff that it would dismiss the case if he “should fail to bring himself within the statute”—that is, within the jurisdictional limit—based on the evidence presented at trial. Id. Notwithstanding this admonition, the “plaintiff offered no proof [at trial] as to the value of his geese, and strenuously opposed the introduction of evidence by the defendant of their value.” Id. The trial court admitted such evidence, which showed that the geese were worth only $9, and dismissed the case.
The plaintiff appealed in this Court, arguing that his case fell within the circuit court’s jurisdiction because he had alleged the geese’s value to be $200, well above the $100 jurisdictional limit of state justices of the peace. We acknowledged that a trial court’s jurisdiction may be properly retained on the basis of a good-faith allegation of property value exceeding the jurisdictional limit, even where the value proved at trial does not ultimately exceed the jurisdictional limit. But because the plaintiffs declaration that the geese were worth $200 was “unjustifiable,” we concluded that “the value alleged . . . was made in bad faith, and was a fraud upon the court.” Id. Accordingly, we affirmed the trial court’s dismissal. Fix thus stands for the proposition that a court subject to a jurisdictional limit may dismiss a complaint for lack of subject-matter jurisdiction, notwithstanding that the jurisdictional allegations are nominally valid, when the court concludes that those allegations were clearly made in bad faith.
As Fix demonstrates, a plaintiff pleads in bad faith by pleading an amount in controversy with an intention to present evidence and argument—i.e., to litigate *230 that case—in a manner inconsistent with that amount. Such bad faith in the pleadings may be assessed based on evidence subsequently offered at trial, but it is important to recognize that the result in Fix was not a product of bad faith exhibited at trial, but a function of bad faith evidenced in the complaint, which became clearly apparent only after the plaintiffs submissions at trial demonstrated both that he had fabricated the value of the geese in order to satisfy the court’s jurisdictional threshold and that he had no initial intention to present a $200 case to the court.
The plaintiff in Fix thus inflated the value of his claim to exceed a court’s minimum jurisdictional limit. By contrast, plaintiff in the instant case may have diminished the value of her claim to avoid exceeding a court’s maximum jurisdictional limit.[5] Notwithstanding the seeming distinction between Fix and the instant case, Fix is nonetheless clear, as the majority recognizes, that a court’s lawful jurisdiction cannot be premised on a pleading made in bad faith. And there is no logical reason why the Fix principle should be limited to jurisdiction obtained by a bad-faith pleading that overstates the value of a claim and not also apply *231 to jurisdiction obtained by a bad-faith pleading that understates the value of a claim. A plaintiff simply does not have unchecked discretion to create jurisdiction in either way. See, e.g., In re Return of Forfeited Goods, 452 Mich 659, 671; 550 NW2d 782 (1996) (“It is well established that jurisdiction of the subject-matter cannot be given by consent.”) (quotation marks and citation omitted; alteration in original).
B. DISTRICT COURT JURISDICTION
Having set forth Fix’s general principle that pleading in bad faith ousts a trial court of jurisdiction, I turn then to the specific question of the jurisdiction of the court at issue in this case, the district court. Our Constitution establishes “one trial court of general jurisdiction known as the circuit court” and authorizes the Legislature to further establish “courts of limited jurisdiction.” Const 1963, art 6, § 1 (emphasis added).[6] The Legislature in response established the district court,[7] which “has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00.”[8] MCL 600.8301(1) (emphasis added). I agree with the majority’s straightforward observation *232 that the district court is thereby "limited to deciding cases” within that amount.
By separating disputes according to whether the amount in controversy exceeds or does not exceed $25,000, § 8301(1) reflects the Legislature’s intention to classify civil cases according to their value.[9] Accordingly, a case with a value exceeding $25,000 is intended for the circuit court and constitutes a "circuit court case,” and a case with a value not exceeding $25,000 is intended for the district court and constitutes a "district court case.” It follows that a plaintiff with a “circuit court case” acts in accordance with the law when he or she pleads the appropriate amount in controversy in the circuit court, and a plaintiff with a “district court case” acts in accordance with the law when he or she pleads the appropriate amount in controversy in the district court.
But, of course, it may come to pass as a result of evolving circumstances, as perhaps it has in the instant case, that a party will plead an amount in controversy not exceeding $25,000 and yet litigate what is a “circuit court case”—one with a value exceeding $25,000—in the district court. Such a pleading would not then reflect the bona fide value of the case. Nonetheless, such a pleading is not necessarily one made in bad faith because the plaintiff may intend to litigate the “circuit court case” as a “district court case” by presenting only the arguments and evidence needed to demonstrate entitlement to the lower damages re- *233 fleeted by the amount in controversy stated in the pleading.[10]
However, when a plaintiff pleads an amount in controversy with the intention to litigate a case inconsistent with that amount, the plaintiff has thwarted the Legislature’s intention, and the pleading has been made in bad faith. In other words, while the plaintiff may have nominally pleaded a case within the district court’s jurisdiction by alleging an amount in controversy not exceeding $25,000, he or she did so with the intention of litigating a “circuit court case” in the district court in contravention of the Legislature’s intention that such a case belongs in the circuit court. A plaintiff does not, at least in my judgment, comply with § 8301(1) merely by pleading—and thus being willing to accept—an amount in controversy not exceeding $25,000; rather, to avoid a finding of bad faith, the plaintiff must plead with the intention to comply with the legal obligation to litigate that case in a manner consistent with the jurisdictional limit set by the Legislature. So when a plaintiff has a case with a value exceeding $25,000—that is, a “circuit court case”—and wishes to litigate in the district court by pleading an amount in controversy not exceeding $25,000, he or she may do so consistent with the Legislature’s intentions only by litigating *234 the case as though it is valued at the pleaded amount, to wit, as a “district court case.”
Pleading an amount in controversy in bad faith not only is incompatible with the Legislature’s intention, but also is incompatible with the integrity of the judicial process, which requires the district court to exercise only the power “conferred upon it by” the Legislature. Rabaut, 389 Mich at 331. When a plaintiff pleads in good faith, a court can effectively police the boundaries of its jurisdiction simply by examining the face of the pleadings, but when a plaintiff pleads in bad faith, because the pleadings fall only nominally within the court’s power, the court risks, through no fault of its own, exercising authority that the Legislature did not intend it to exercise. Such an exercise of power is incompatible with the integrity of our judicial process, and when it is a function of the plaintiffs own conduct in the pleadings, the court is justified in finding that he or she has pleaded in bad faith.[11]
As suggested above, litigating a “circuit court case” in the district court is incompatible with both the Legislature’s intention and the integrity of the judicial process, and, consequently, a pleading intended to facilitate this as a litigation strategy is a pleading made in bad faith. That bad faith is further exemplified *235 by the sheer incompatibility of a “circuit court case,” whose value exceeds $25,000, with the capabilities of the district court, which is designed for cases with values not exceeding $25,000. As a general proposition, it is reasonable to assume that the greater the amount of the claim, the more strenuously the parties will litigate, the more evidence will be placed before the jury, and the more numerous and complex will be the issues presented. By distinguishing the jurisdictions of the district court and the circuit court on the basis that the former generally hears cases with lesser amounts in controversy and the latter cases with greater amounts in controversy, the Legislature also presumably intended that the former generally hears cases of lesser complexity and the latter cases of greater complexity.[12]
This Court’s own rules underscore the different levels of complexity inherent in typical “district court cases” and typical “circuit court cases.” For example, the discovery rule permits discovery as a matter of course in “circuit court cases” while permitting it only with the court’s leave or by the parties’ stipulation in district court cases. See MCR 2.302(A)(2). The case-evaluation rule is another example of a rule distinguishing between the two types of cases; the rule authorizes the shortening of deadlines for hearings *236 and party briefs only in the district court. See MCR 2.403(A)(4). Such rules thus, in accordance with the Legislature’s intention, treat “district court cases” and “circuit court cases” differently, investing the former, where the amounts of disputes are lower, with procedures designed for more expedited resolution.[13] Because of these and other differences in both court rules and statutes, as well as in the accumulated histories and experiences of the judges on these courts, the circuit court is the court best equipped to hear “circuit court cases,” and the district court, though being best equipped to hear “district court cases,” is correspondingly less well-equipped to hear “circuit court cases.” Therefore, a pleading resulting in the litigation of a “circuit court case” in the district court is also less compatible with the district court’s innate capabilities.
The district court’s jurisdictional limit, and what this requires of a plaintiff, can be appreciated perhaps by considering the following hypothetical. A plaintiff wishes to bring a personal-injury claim of less than $25,000 based on an injury to a single arm. This “one-arm case” may be brought in the district court, and the plaintiff will be free to fully present arguments and evidence as to the full extent of the injury. By contrast, another plaintiff wishes to bring a personal-injury claim that exceeds $25,000 based on injuries to both arms and both legs. In order to recover the full measure of damages, this “four-limb case” must be brought in the circuit court, because that court alone can award relief in an amount exceeding $25,000. The question posed by the instant case is whether the *237 four-limb case, if brought in the district court by pleading an amount in controversy of $25,000, must be dismissed for lack of subject-matter jurisdiction on the basis that such a pleading was clearly made in bad faith. The answer, as suggested by the analysis above, depends on what type of case the plaintiff intended, when filing his or her pleading, to litigate. If the plaintiff intended to present evidence of the full extent of his or her injuries—that is, if he or she intended to present the four-limb case—then he or she pleaded in bad faith because, despite having pleaded an amount in controversy not exceeding $25,000, he or she intended to litigate a “circuit court case” in the district court. In these circumstances, because the plaintiffs bad faith creates the risk that the district court will hear a “circuit court case,” the district court must dismiss the case. A plaintiff intending to litigate the four-limb case in the district court may do so, but only by restricting himself or herself to the presentation of arguments and evidence consistent with the amount in controversy pleaded and not merely by demonstrating a willingness to accept damages not exceeding $25,000. Thus, the critical inquiry in assessing bad faith is whether the plaintiff clearly intended to litigate a case inconsistent with the amount in controversy pleaded.
However, whether the plaintiff intends to present a case consistent with the amount in controversy pleaded may be a difficult question because the plaintiffs intention to engage in litigation tactics illustrative of bad faith will not often be obvious from the face of the complaint. The trial court therefore must be attentive to assessing the presentation of arguments and evidence that may reasonably communicate that the plaintiff in reality has pursued a “circuit court *238 case” in the district court for the purpose of obtaining some litigation advantage.[14]
C. EVIDENCE OF BAD-FAITH PLEADING
A plaintiff acts in bad faith when he or she litigates a “circuit court case” in the district court for the purpose of obtaining some litigation advantage. The district court must be vigilant to such conduct, which, because it may suggest the plaintiffs intentions at the time of his or her pleadings, may constitute evidence of the plaintiffs pleading in bad faith. I offer an illustrative listing of circumstances that may support a finding of bad faith in the amount in controversy pleaded.
1. EXCESSIVE EVIDENCE
One way by which a plaintiff may achieve an unfair advantage by litigating a “circuit court case” in the district court is, despite having pleaded an amount in controversy not exceeding $25,000, by presenting evidence of injuries that do exceed $25,000. Such conduct places the defendant at a disadvantage because although liability is limited to $25,000, the defendant *239 will nonetheless be required to prepare a defense that is not similarly limited. In the instant case, for example, defendant first learned during discovery that plaintiffs injuries could be as high as $260,000. Even though plaintiff was willing to accept only $25,000 in damages, defendant had to be prepared to litigate a $250,000 case, i.e., a “circuit court case.” A defendant facing a “circuit court case” must be prepared to defend against a “circuit court case,” regardless of the venue in which that case is filed. This greater preparation may lead to higher legal costs, which may at some point come to be viewed as disproportionate to the liability created by the amount pleaded, and ultimately create undue pressures to settle, where no such pressures may have been created had the plaintiff litigated a bona fide “district court case.”[15] By taking advantage of the jurisdictional rules, the plaintiff has shifted the defendant’s settlement calculus from a traditional evaluation of case strengths and weaknesses to an evaluation of the benefits of litigating in the district court and of the expenditure of “circuit court case” legal costs.
2. ABSENCE OF DISCOVERY
Similar unfair advantage in arguing a “circuit court case” in the district court may be gained by the absence of mandatory discovery in the district court. As a general rule, “parties may obtain discovery by any *240 means provided in [MCR 2.301 et seq.],” but “in the district court, no discovery is permitted . . . except by leave of the court or on the stipulation of all parties.” MCR 2.302(A)(1) and (2); see also Ward v McNamara Community Hosp, 426 Mich 855 (1986). This “major limitation!] on discovery,” 1985 Staff Comment to MCR 2.302, is consistent with the Legislature’s intention that the district court hear only cases whose values do not exceed $25,000, many of which may be straightforward enough to render discovery unnecessary. Moreover, in genuine “district court cases,” the absence of discovery often enables parties to avoid the expenditure of time and resources more typically associated with “circuit court cases.”
But where the plaintiff seeks to litigate a “circuit court case” in the district court, the absence of discovery could greatly hinder a defending party. When a plaintiff pleads an amount in controversy for the purpose of obtaining district court jurisdiction, yet is allowed to present argument and evidence significantly exceeding $25,000, the defendant could face a hardship because of an inability to learn more about the claim and to present a complete defense. In the absence of discovery, the plaintiffs settlement leverage described above is further magnified because the defendant must then weigh the potentially disproportionate costs of litigating a “circuit court case” against the financial exposure of a “district court case” and must do so without full knowledge of the plaintiffs claim. Thus, not only has the plaintiff gained an unfair advantage by our rules of jurisdiction, he or she has gained an unfair advantage by our rules of procedure. In the instant case, for example, it is possible that plaintiff may have withheld most of, if not all, the details of her injuries and their treatment, because the full extent of plaintiffs injuries—amounting to as *241 much as $250,000—came to light only during subsequent discovery. Yet in pleading an amount in controversy to obtain the jurisdiction of the district court, plaintiff may have been motivated at least in part by the possibility that there would be little or no discovery in that court. That such discovery ultimately occurred should not distract from an inquiry into why plaintiff, whose case had a potential value of $250,000, pleaded a “district court case” and then appeared to litigate a “circuit court case,” for what matters is plaintiffs bad faith at the pleadings. Only an amount in controversy pleaded for the purpose of litigating a “circuit court case” in the district court ousts the district court of jurisdiction.
3. OFFER OF JUDGMENT
A plaintiff may further obtain an unfair advantage in arguing a “circuit court case” in the district court through the offer-of-judgment rule, MCR 2.405. Under that rule, one party (the offeror) may make a settlement offer, and if the other party (the offeree) rejects the offer, the offeree may be liable for the offeror’s litigation costs unless the offeree improves his or her position at trial. The rule thereby “encourage [s] settlement and . . . deter [s] protracted litigation.” Hamilton v Becker Orthopedic Appliance Co, 214 Mich App 593, 596; 543 NW2d 60 (1995) (quotation marks and citation omitted). But an unfair advantage may also be gained because offers of judgment “are formulated by the parties themselves, creating the possibility that a party may make an offer not in a bona fide attempt to settle the case, but merely to create the possibility of securing an award of costs.” Freeman v Consumers Power Co, 437 Mich 514, 519 n 8; 473 NW2d 63 *242 (1991).[16] In particular, an unfair advantage may be gained when a plaintiff files an offer of judgment just below the jurisdictional maximum amount in controversy. The defendant, in choosing whether to accept or reject the offer, say an offer of $24,900, must then consider, not only its own costs of litigating to a verdict, but also the risks of having to pay the plaintiffs costs, for which the defendant will be liable unless it can improve on the $24,900 at trial. But because the plaintiff may be offering evidence in support of injuries well in excess of $25,000, and thereby litigating a “circuit court case” in the district court, the defendant, to achieve a more favorable result at trial, faces the task of having to convince the jury to discredit what may be a substantial amount of plaintiffs evidence in order to reduce the final award to an amount below $24,900. Thus, by submitting an offer of judgment just below the district court’s jurisdictional maximum while litigating a “circuit court case,” plaintiff may be able to gain an unfair advantage under the jurisdictional and procedural rules by recovering nearly the same amount (either $24,900 or $25,000) regardless of whether defendant accepts or rejects the offer of judgment.
*243 4. JURY CONFUSION
Pleading a jurisdictional amount in bad faith in the district court may also entail interference with the jury function. The presentation of evidence of injury typical of a “circuit court case” may, as explained above, unfairly and directly disadvantage the defendant. It may also unfairly and indirectly disadvantage the defendant by skewing in plaintiffs favor a jury finding of liability, despite the fact that findings of injury and liability are distinct considerations. Professor Brian Bornstein, for example, asserted this result after presenting mock jurors with factual scenarios in which evidence of liability was held constant while evidence of the magnitude of injury varied. Bornstein concluded that fact-finders “will make different [liability] judgments depending upon the severity of the plaintiff[’]s injury.”[17] That is, the more abundant the evidence of injury presented, the more likely it is, all else being equal, that liability will be found. This is not only a matter of social-science evidence, but a matter that may be seen as affirmed by ordinary and commonsense understandings of human psychology: where two parties present evidence and seek damages for injuries done to a single arm, the party who is allowed to present evidence, beyond the scope of the case, that he or she also suffered injury to the other three limbs will tend to fare better between the two litigants. Evidence of the injuries to all four limbs might be relevant in a “circuit court case,” but in the district court, evidence of injury beyond the one arm might be irrelevant and prejudicially excessive. Consequently, the plaintiffs *244 advantaging himself or herself of such an effect might well suggest bad faith.[18]
5. JURY INFLUENCING
By litigating a “circuit court case” in the district court, the plaintiff may also take advantage of another cognitive bias, known as the “anchoring effect,” that could affect the jury. According to Professor Daniel Kahneman, this “occurs when people consider a particular value for an unknown quantity before estimating that quantity.”[19] He asserts that the anchoring effect influences decisions even if the “particular value” considered has nothing to do with the quantity to be estimated. In the context of a jury trial, the anchoring effect suggests that the jury’s final award may sometimes be unduly affected by a large initial presentation of damages.[20] Accordingly, a jury may rely on a plaintiffs initial “anchoring value” to set the award’s range and then reach a final award by “discounting.”[21] Consider the case, for example, in which a plaintiff who has suffered injury to four limbs is allowed to sue in *245 the district court, and the jury apprehends—perhaps from the presentation of the case or from its own inferences—that the value of the claim is $100,000. The jury may in the end decide to “discount” the claim by some amount, say 50%, on the basis that the testimony regarding pain and suffering was only partially credible, yielding a final award of $50,000. The court will reduce the $50,000 award to $25,000, in accordance with the plaintiffs pleading and the limits of its own jurisdiction. If, however, the plaintiff had been required to litigate the case in the district court as a “district court case,” say one in which he or she had suffered injury only to one arm, the jury’s 50% discount would have applied to a $25,000 claim, yielding a final post-discount award of $12,500. While a plaintiff may have no control over the discount a jury applies to the amount the plaintiff seeks to recover, by litigating a “circuit court case” in the district court, a plaintiff separates the value of the claim from the amount of damages sought and potentially facilitates a legal environment in which the anchoring bias inures to his or her advantage.
III. CONCLUSION
A party pleads in bad faith by setting forth an amount in controversy within the district court’s jurisdiction while intending to litigate a “circuit court case” in the district court. See Fix, 83 Mich at 563. While bad-faith pleadings are rare, when they do occur, they undermine the law of our state and the integrity of our judicial process, and they give rise to conditions at trial in which a party may be unfairly prejudiced. In particular, because each of the parties may, under some circumstances, view litigating a “circuit court case” in the district court as being within the party’s interest, *246 the district court is obligated to be vigilant in identifying bad-faith conduct, and it must be prepared to “question sua sponte its own jurisdiction” in order to preserve the aforementioned values. Straus, 459 Mich at 532. Such jurisdiction may be questioned “at any stage of the proceeding,” and when the circumstances clearly demonstrate that jurisdiction has been obtained by a pleading in bad faith, the case must be dismissed. Estate of Fraser, 288 Mich at 394.

 See, e.g., 20 Am Jur 2d, Courts, § 103 (“The plaintiffs pleadings are generally determinative as to the amount in controversy unless the defendant specifically alleges and proves the amount was pleaded merely as a sham for the purpose of wrong fully obtaining jurisdiction or can readily establish that the amount in controversy does not fall within the court’s jurisdictional limits.”) (emphasis added).

 One federal practice treatise states that “[u]nder well-settled principles of pleading, the plaintiff is the master of the statement of his claim.” 14AA Fed Prac & Proc Juris (4th ed), § 3702. But the treatise goes on to note that the plaintiffs choice controls only “absent a showing of bad faith.” Id. In the instant case, because the present record does not sufficiently reflect that plaintiffs allegations were made in bad faith, because “defendant made no allegation of bad faith in the pleadings,” and because “there has been no finding of bad faith by the district court,” see the majority opinion at note 31,1 believe that this Court currently lacks a basis to conclude that plaintiff pleaded in bad faith.

 Two other such cases recently have come before the Court. Moody v Home Owners Ins Co, 497 Mich 866; 858 NW2d 462 (2015); Madison v AAA of Mich, 858 NW2d 463 (2015). Counsel in these two cases is also plaintiffs counsel in the instant case.

 Const 1850, art 6, § 18 (“In civil cases justices of the peace shall have exclusive jurisdiction to the amount of one hundred dollars . . .

 Plaintiff sought $25,000 in damages, yet discovery and evidence subsequently indicated that her claim may have been worth as much as $250,000. Questions of bad faith aside, why a plaintiff might be prompted to reduce recovery by as much as 90% in order to have it heard in one judicial venue instead of another is itself a matter of considerable consequence for the fairness of the justice system and the equal rule of law, although beyond the scope of inquiry in this case. At the very least, however, I do believe that plaintiffs attorney had a professional and ethical obligation to explain clearly to the client both the rationale for such a substantial reduction in recovery and the likely waiver of the right to sue for the balance of the claim in excess of the jurisdictional maximum. MRPC 1.4(b) (“A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.”); see also MRPC 1.7(b).

 See also MCL 600.605 (“Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.”).

 MCL 600.8101(1) (“A district court is established in the state.”).

 Many other states have trial courts whose jurisdictions are limited by dollar thresholds. See Dollar Amount Jurisdiction for Tort, Contract, Real Property, and Small Claims Filings in State Trial Courts, 2010, available at <http://www.courtstatistics.Org/~/media/Microsites/Files/CSP/SCCS/ 2010/Civil-Dollar_Amount_Jurisdiction> [https://perma.cc/69K6-MM8A]; see also 21 CJS, Courts, § 22, pp 31-32 (“Under various constitutional or statutory provisions, superior courts of general jurisdiction are limited in their jurisdiction to cases involving amounts in excess of a specified *232 amount, and inferior courts of limited jurisdiction are limited in their jurisdiction to actions involving amounts between specified amounts.”).

 See, e.g., 21 CJS, Courts, § 22, at 32 (“[T]he policy [of specifying a jurisdictional amount] is to force litigants whose disputes involve only comparatively trifling amounts to resort to inferior courts .. ..”).

 It is also possible that a plaintiff could file a case in the district court in the good-faith, but incorrect, belief that the case has a value not exceeding $25,000 and learn only later in the proceedings that the case, in fact, has a value exceeding $25,000. Such a plaintiff could not be said to have pleaded the amount in controversy in bad faith. Although the trial court is not ousted of jurisdiction in such circumstances, it remains responsible for enforcing its procedural and evidentiary rules, and for exercising its trial-management prerogatives, in a manner that ensures that any inconsistency between the amount in controversy pleaded and the actual value of the case does not prejudice or disadvantage the defendant.

 A court must continually question its jurisdiction at every “stage of the proceeding.” In re Estate of Fraser, 288 Mich 392, 394; 285 NW 1 (1939). The district court in particular must be vigilant in assessing its own jurisdiction because under some circumstances both parties may have an interest in litigating a “circuit court case” in the district court—the plaintiffs own decision would initiate the litigation in that venue, and the defendant might prefer the capped liability that results when a higher-value “circuit court case” is brought in the district court. Under such circumstances, the district court might be alone in upholding the integrity of the legislative and judicial processes. Id. (“Courts are bound to take notice of the limits of their authority . . .

 The Legislature also has directed to the district court criminal matters of relatively lesser complexity. See MCL 600.8311 (giving the district court jurisdiction over “[m]isdemeanors punishable by a fine or imprisonment not exceeding 1 year”; “[ordinance and charter violations punishable by a fine or imprisonment”; “[ajrraignments, the fixing of bail and the accepting of bonds”; certain “[p]robable cause conferences”; “[p]reliminary examinations”; and “[c]ircuit court arraignments”). The district court’s civil and criminal jurisdictional statutes clearly indicate the Legislature’s intention to direct toward that court relatively less complex, less consequential, and more straightforward cases and controversies.

 That the district court is intended to hear relatively less complex matters is further evidenced by the fact that the court rules direct to the district court summary landlord-tenant proceedings, MCR 4.201 to MCR 4.202, and small-claims actions, MCR 4.301 to MCR 4.306.

 In the instant case, plaintiff alleged a “closed head injury,” “pains in left shoulder, back, neck area, [and] lower back,” and a “bruise on [the] left anide,” as well as “expenses for care, recovery, or rehabilitation,” “loss of wages,” “replacement services,” and “attendant care.” It is not clear from these allegations that plaintiffs claim had a value exceeding $25,000; nor is it clear that by filing the case she intended to litigate a “circuit court case” in the district court. But had the district court inquired into the issue of bad faith at the pleadings, it may nonetheless have concluded, similar to the court in Fix, that plaintiff clearly had no intention of litigating a case consistent with the amount in controversy pleaded. Such an inquiry may have revealed that plaintiff intended from the outset to litigate a “circuit court case” in the district court by presenting evidence of injuries exceeding $25,000. As in Fix, evidence of such an intention might show that the pleadings themselves were clearly made in bad faith and thus warrant dismissal.

 I am cognizant that the backdrop of such a case will always be that a $25,000 maximum settlement may be significantly less than the defendant might have faced in the circuit court. However, once filed in the district court, a case becomes a “district court case,” and a defendant should not have to settle on the basis of “circuit court case” considerations. More importantly, whatever the practical equities facing the two parties, the people of this state are entitled to have the laws of their representatives respected and the jurisdiction of their courts honored.

 The offer-of-judgment rule may be contrasted with the case-evaluation rule, MCR 2.403. The latter also seeks to shift fees to a party that refuses to accept an offered “case-evaluation award.” But unlike an offer of judgment, which is formulated by the offering party itself and may not always reflect “a bona fide attempt to settle the case,” a case-evaluation award is formulated “by three lawyers who are wholly uninvolved in the litigation” and thus not susceptible to a plaintiffs gamesmanship. Freeman, 437 Mich at 519 n 8. Case evaluation is prominent in the circuit court. See MCR 2.403(A)(2) (“Case evaluation of tort cases filed in circuit court is mandatory .. . .”); ICLE, Michigan Civil Procedure (April 2014), § 14.1, p 1034 (“Most cases in circuit court in which monetary relief is sought are submitted to case evaluation.”). It is not, however, required in the district court. See MCR 2.403(A)(4).

 Bornstein, From Compassion to Compensation: The Effect of Injury Severity on Mock Jurors’ Liability Judgments, 28:16 J Applied Soc Psychol 1477, 1478, 1485 (1998).

 Defendant here challenged plaintiffs offering of “excessive” evidence of injury as “cumulative.” The motion was opposed by plaintiff and denied by the trial court.

 Kahneman, Thinking, Fast and Slow (Farrar, Straus, and Giroux, 2011), p 119.

 See, e.g., Chopra, The Psychology of Asking a Jury for a Damage Award, Plaintiff Magazine, March 2013, p 7 (“Early research looking at the way jurors used anchoring in the context of jury damage awards suggested that the larger the lump sum request made by plaintiffs counsel, the larger the average award.”); Sunstein et al, Assessing Punitive Damages (With Notes on Cognition and Valuation in Law), Behavioral Law & Economics (Sunstein ed) (Cambridge University Press, 2000), p 235 (“The amount demanded by the plaintiff also affected the size of the awards, most likely an anchoring effect, which influences the award directly . . . .”).

 See Sunstein et al, Assessing Punitive Damages, p 243.