*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOWNSHIP OF OCEOLA,

Plaintiff-Appellee,

v

JOHN NOWACKI,

Defendant-Appellant.

UNPUBLISHED
April 15, 2021

No. 351914
Livingston Circuit Court
LC No. 13-027714-CZ

Before: CAMERON, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, John Nowacki, appeals as of right the circuit court's amended order requiring him to clean up his property and pay a court-appointed receiver. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Nowacki owns property on Eager Road in Oceola Township. On October 4, 2013, plaintiff, the Township of Oceola, filed an action in the circuit court, alleging that Nowacki's property was in violation of the Oceola Township Litter, Junk, Junk or Unlicensed Vehicles, and Anti-Blight Ordinance (the blight ordinance). In its request for relief, the Township requested both a preliminary and a permanent injunction to "bring the Subject Property into compliance" with the blight ordinance by requiring the removal of "any and all junk from the Subject Property." Thereafter, the circuit court entered an order requiring Nowacki to appear and show cause as to why he should not be ordered to "clean up" his property and "be prohibited from maintaining junk, litter, blight, scrap materials, carpeting, tires, scrap trailers, equipment, and miscellaneous junk and unlicensed vehicles" on his property. The show-cause hearing, however, was repeatedly adjourned, apparently to give the parties time to resolve their dispute over the condition of the property. On July 14, 2014, the circuit court entered an order requiring the Oceola Township

-1-

Board to conduct a hearing on the matter in accordance with the procedure set forth in the blight ordinance.[1]

On July 21, 2014, the Township sent notice to Nowacki, informing him that his Eager Road properties were in violation of the blight ordinance and directing him to appear at a Township Board meeting. On August 7, 2014, a hearing was held before the Township Board to address whether Nowacki's properties violated the blight ordinance and, if so, to determine whether an enforcement action should be taken.

---

[1] Section 6 of the blight ordinance provides:

   a. The Township Board is hereby charged with the enforcement of this Ordinance, upon a complaint being filed in writing with the Township Supervisor or the Supervisor's designee, or upon the motion of the Township Board.

   b. When any enforcement of the Ordinance shall occur, the Supervisor shall cause written notice of the same to be served upon the owner and occupant of the premises where the violation has occurred.

   c. In the event that a violation exists pursuant to Section 5 above, the Supervisor shall set a date for hearing before the Township Board at which hearing a determination shall be made by the Board whether the premises in question fall within the provisions of this Ordinance and whether enforcement action shall be taken. Notice of hearing shall be sent to the owner and or occupant of the premises by certified mail not less than ten (10) days prior to the hearing and shall set forth the following:

      (1) A notice of time and place of hearing

      (2) A definite factual statement of the violation charged

      (3) Notice of the right to cross-examine witnesses and the right to provide witnesses in the owner's behalf.

      (4) The nature of the enforcement action which may be taken by the Township if the violation is not corrected.

   e. In the event that a violation under Section 5 has been determined by the Board to exist and the owner fails to demonstrate his capacity to restore, or remove the same within the time limits prescribed by the Board, then the Board may proceed to take enforcement actions.

Following the hearing, the Board adopted a resolution finding that both of Nowacki's properties were in violation of the blight ordinance,[2] giving Nowacki 30 days to correct the violation, and advising that if he failed to do so that the Board would take legal action to ensure compliance, including a civil infraction fine of $100 for each day each parcel remained in noncompliance, a declaration that the violations were a nuisance per se, thereby permitting the Township to pursue an abatement of the nuisance, and injunctive relief.

Subsequently, the Township filed a motion for leave to amend its complaint in the circuit court. Nowacki opposed the motion, noting that he had filed an appeal of the Board's resolution with the circuit court. The circuit court granted the Township leave to amend its complaint and entered an order consolidating the Township's action with Nowacki's appeal of the Board's resolution.

On October 7, 2014, the Township filed its amended complaint. The Township again asserted that Nowacki's properties were in violation of the blight ordinance, noting that violation had been determined by the Township Board following a meeting in August 2014. The amended complaint further alleged that although 30 days had passed since the Board's resolution finding that Nowacki's properties violated the blight ordinance, Nowacki had not corrected the blighted conditions on the properties. The Township alleged that the blight conditions were a public nuisance or a nuisance per se that needed to be abated, and it sought a preliminary and permanent injunction to enjoin Nowacki from storing "junk" on the properties. The Township also requested entry of an order declaring the violations of the blight ordinance to be a civil infraction and to assess fees of $100 for each day that each parcel remained in violation of the blight ordinance.

On November 17, 2014, Nowacki filed his brief in support of his appeal to the circuit court of the Board's decision finding that he had violated the blight ordinance. Relevant to the issues raised on appeal, the parties disputed whether the Board's determination that he violated the ordinance was not based upon substantial, competent, or material evidence. In addition, Nowacki also asserted that his use of the property was a prior non-conforming use so as to exempt him from the enforcement of the blight ordinance, which he classified as a zoning ordinance. The Township responded that the ordinance was a regulatory ordinance, so there was no exemption for a prior non-conforming use. In his reply brief, Nowacki argued that if the ordinance were a regulatory

---

[2] The Board found that one of Nowacki's parcels was in violation of the ordinance "because the following items were stored outside on the premises: an old tractor, two deteriorating camper trailers, two semi-truck trailers, an old Hi-Lo, an old fuel oil tank, old unused building block, an old band saw, an old barrel, an old burn barrel, old pieces of glass, old cables or wires, an old portable generator, an old hauling trailer, and many miscellaneous items including tires, wheels, and various rusty items." The Board further found that the dwelling on that parcel was "found to be in violation of Section 5h of the [blight] Ordinance" because it "has deteriorated to the point of not being habitable, as there are holes throughout the outside walls, the roof shingles have deteriorated, and the windows are missing." Finally, the Board found that the premises on Nowacki's second parcel were "in violation because the following items are improperly stored outside on the premises: a flatbed trailer supported by building blocks, a large pipe, and an assortment of miscellaneous machinery and other items."

ordinance, then the circuit court lacked subject matter jurisdiction over the matter. Further, because the circuit court lacked jurisdiction, its order directing the Board to hold a hearing to determine whether a violation of the ordinance occurred was done without "lawful authority." Nowacki implied that because the Board's resolution was the direct result of a circuit court order entered without lawful authority, the Board's resolution likewise had no effect. Following a hearing on the appeal, the circuit court entered an order holding that the Board's resolution was supported by competent, material, and substantial evidence.

Thereafter, on April 6, 2015, the Township filed a motion for summary disposition, arguing that the violation had been established by the Board and had been affirmed by the circuit court following Nowacki's appeal. The Township asserted that all that remained was to enforce the ordinance, noting that it was requesting the relief set forth in the ordinance. Nowacki opposed the motion, arguing in part that the ordinance had not been properly enacted. The motion was dismissed without prejudice. Thereafter, the court entered a stipulated order permitting an on-site inspection. Following the on-site inspection, the court directed the property to be "cleaned up as the Court directed at the certain site visit on June 30, 2015, and the items the Court designated shall be removed or placed in the barn on the concrete pad, which shall be screened . . . ." On October 2, 2015, the court entered another order, stating that if the property was not cleaned up as directed by October 24, 2015, the court was going to appoint a receiver to do so. The court entered an order appointing a receiver on October 30, 2015. The court, thereafter, entered a number of orders addressing the clean-up efforts on the properties, and the parties filed several motions related to the clean-up and the interpretation of the court's orders. Then, on November 26, 2019, the court entered its final order, requiring Nowacki to pay the receiver and to clean up the properties as directed.

This appeal follows.

## II. SUBJECT MATTER JURISDICTION

### A. STANDARD OF REVIEW

Nowacki argues that the circuit court lacked subject matter jurisdiction because the Township was actually pursuing an ordinance violation over which the district court had exclusive jurisdiction. See MCL 41.183(6) (stating that "[a]n action for the violation of a township ordinance shall be instituted in the district court"). Whether a court has subject matter jurisdiction is an issue that may be raised at any time. *Smith v Smith*, 218 Mich App 727, 729-730; 555 NW2d 271 (1996). "Existence of subject-matter jurisdiction is a question of law reviewed de novo." *Midwest Energy Cooperative v Pub Serv Comm*, 268 Mich App 521, 523; 708 NW2d 147 (2005).

### B. ANALYSIS

"Jurisdiction, when applied to courts, is the power to hear and determine a cause or matter." *Bowie v Arder*, 441 Mich 23, 36; 490 NW2d 568 (1992) (quotation marks and citation omitted). "[J]urisdiction over the subject matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending. . . ." *Id*. at 39 (quotation marks and citations omitted).

"When a court lacks subject matter jurisdiction to hear and determine a claim, any action it takes, other than to dismiss the action, is void." *Id*. at 56.

Pursuant to MCL 600.605, "[c]ircuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." Nowacki argues that because the blight ordinance is regulatory in nature, the district court, not the circuit court has subject matter jurisdiction over the claim. See MCL 41.183(6) ("An action for the violation of a township ordinance shall be instituted in the district court . . . ."). However, "[a]s a court of general equity jurisdiction, a circuit court has subject-matter jurisdiction to issue an injunction." *Cherry Growers, Inc. v Mich Processing Apple Growers, Inc*, 240 Mich App 153, 161; 610 NW2d 613 (2000). And under MCL 600.2940(1), "[a]ll claims based on or to abate [a] nuisance may be brought in the circuit court. The circuit court may grant injunctions to stay and prevent nuisance." See also *Ypsilanti Charter Twp v Kircher*, 281 Mich App 257, 275–276; 761 NW2d 761 (2008) ("Circuit courts have broad equitable authority to abate nuisances under MCL 600.2940."). Additionally, by statute, a " 'district court shall not have jurisdiction in actions for injunctions . . . or actions which are historically equitable in nature, except as otherwise provided by law.' " *People v Keeth*, 193 Mich App 555, 562; 484 NW2d 761 (1992), quoting MCL 600.8315. Therefore, although MCL 41.183(6) provides district court's jurisdiction for violation of a township ordinance, it does not divest the circuit court of jurisdiction over actions for the abatement of a nuisance and for injunctive relief.

In this case, the circuit court was not asked to determine that Nowacki's properties violated the blight ordinance. That determination was instead made by the Township Board on August 7, 2014. Under the Section 7(c) of the blight ordinance, a violation of the ordinance—such as the one found by the Board in August 2014—is deemed a nuisance per se. The Township's amended complaint sought injunctive relief and abatement of the nuisance, both of which are actions properly brought in circuit court. Consequently, the circuit court did not err by exercising subject matter jurisdiction over this case.

III. VALIDITY OF BLIGHT ORDINANCE

Nowacki next argues that the blight ordinance is invalid because the Township failed to properly enact it. He asserts, without citation to the record, that he raised this issue before the circuit court, but that the court did not address his argument. Based on our review of the record, we have ascertained Nowacki briefed this issue in his 2014 motion for summary disposition. But, because he withdrew that motion, the circuit court had no opportunity to address Nowacki's challenge to the validity of the ordinance. Nowacki again challenged the validity of the ordinance in response to the Township's 2015 motion for summary disposition. However, on May 7, 2015, that motion was dismissed without prejudice. Thereafter, between May 7, 2015 and November 26, 2019, the issue does not appear to have been brought before the court. Thus, although technically "raised" before the circuit court, the argument was abandoned when the first motion raising the issue was withdrawn by Nowacki and the second was dismissed without prejudice. Having declined to pursue this argument to a resolution in the trial court, Nowacki waived this issue. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "This is also in keeping with our longstanding rule against harboring error as an appellate parachute." *Marshall Lasser,*

*PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002).  Additionally, as the issue was not raised again after Nowacki twice abandoned it, we conclude that the issue has not been properly raised so as to permit appellate review.  See *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008) (holding that the failure to timely raise an issue in the trial court waives review of that issue on appeal).

## IV.  RESOLUTION 14-08-03

### A.  STANDARD OF REVIEW

Nowacki lastly argues that the circuit court erred by affirming the Board Resolution finding that his properties violated the blight ordinance.  We review de novo the circuit court's application of legal principles in reviewing an administrative decision, including matters of statutory interpretation. *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009).  Given that the circuit court—at the behest of the parties—reviewed the Board's decision as if it were an administrative decision, we will apply the same of standard to review the circuit court's review of the Board's decision finding Nowacki violated the blight ordinance.

### B.  ANALYSIS

Section 3(a) of the blight ordinance provides that a "blighted structure" includes "dwellings that are uninhabitable or any building that constitutes a threat to public health, safety, or welfare due to impairment from fire, wind, natural disaster, physical deterioration or vandalism."  Section 3(f) provides that "junk" "means objects that are either worn-out, unusable or discarded, and any parts thereof, including but not limited to items such as stoves, refrigerators, appliances, fixtures, boats, campers, household goods, furniture, tires, mattresses, batteries, machinery, broken toys and bicycles, broken lawn furniture, remnants of wood and building materials, and equipment."  Finally, Section 3(g) defines junk motor vehicles as "automobiles, trucks, vans, motorcycles, motor homes and other motor vehicles that have been unlicensed for a period in excess of sixty (60) days where such vehicles are not kept or stored in an enclosed building, and shall include whether licensed or not, any vehicle which is inoperable for any reason in excess of 60 days."

Section 5(a) of the blight ordinance provides that it is "unlawful for any person to store or to permit the storage or accumulation of junk on any private property except within an enclosed building, or in a rear yard and screened from view from off-site and from any road right-of-way, or upon the premises of a properly zoned and licensed or approved junk dealer or salvage yard."  Section 5(f) of the blight ordinance provides that "[t]he parking, storage or accumulation of junk and/or unlicensed motor vehicles, or parts thereof, is prohibited, except under the following circumstances: 1) located in a completely enclosed building or otherwise screens from view off-site and any road right-of-way, or 2) located upon the premises of a properly zoned and licensed or approved motor vehicle dealer, motor vehicle parts dealer, automobile repair shop or garage, junk dealer or salvage yard, or 3) unless there is in force a valid permit issued by the Township Zoning Administrator for storage of unlicensed and or inoperative motor vehicle(s)."  Section 5(h) provides that:

(1) Any building, structure or part of a building or structure which because of . . . physical deterioration is no longer habitable as a dwelling or useful for any other purpose for which it may have been intended shall be prohibited.

(2) It shall be unlawful for any person to own or keep a blighted structure, dwelling or other building on any property, or to keep a blighted structure, dwelling or other building on property where no one resides unless such buildings and structures are securely locked, windows are either glazed or neatly boarded up, and such buildings and structures are otherwise protected from entrance by unauthorized persons . . . .

Here, at the Board meeting, a zoning administrator explained that he had been to Nowacki's properties in July 2014, and that, from the roadway, he took a number of photographs of various items on the property. The administrator acknowledged that he used a telephoto lens to zoom in on the items so as to make it clearer what he was photographing; however, he also stated that he could see the items from the roadway without the camera. He also stated that a neighboring property owner had contacted the Township to complain about the various items scattered on Nowacki's property. The zoning administrator told the Board that "driving down the road you can see everything." He did not see any indication that Nowacki had tried to screen anything to prevent it from being seen from the roadway or off-site.

In contrast, Nowacki's lawyer presented photographs taken in June 2014 that depicted the same property and a video recording taken from a vehicle moving past the properties. Nowacki's lawyer argued that, based on the photographs, it was plain that the so-called junk items were not visible from the roadway or off-site, so there was no violation of the blight ordinance. Yet, on questioning from the Board, Nowacki's lawyer admitted that, to the extent that the trees and overgrown brush blocked the view, that they would not impose the same barrier during the winter months. Further, one Board member opined that the differences in the photographs had to do with "the way" Nowacki's photographer "stood in the roadway and took the pictures."

Nowacki also questioned whether the items on the property were "junk" as that term was defined by the ordinance. Nowacki's lawyer and the Board also questioned Nowacki as to the various items in an attempt to ascertain if they were junk.[3]

---

[3] Nowacki stated that he had cut an oil drum in half and used it to store his tractor before he moved his tractor into a barn. Thereafter, he used the halved oil drum to keep rain "off of stuff," including a "vacuum machine" that he had used a year prior to teach refrigeration at a community college. Nowacki also said that an old tire was the remains of a tire swing that he had taken down and "just threw" to the side, that there was a pallet that had been there for "[a] very long time," and that a second halved oil drum was used to shield a hydraulic unit used "for education" from the weather. He noted that a plastic barrel was used for "[n]othing," then added that it was maybe used for rainwater. He admitted that there was a yard-waste shredder in the yard, but he did not know when it was last used. Nowacki described another item as "the roofing thing," where he used to park his tractor; he added that he now uses it to keep "the rain off stuff." When asked about the "steel

There was also evidence given as to the condition of the house on the second parcel. The zoning administrator stated that there were windows missing, that none of the windows were covered with boards, that there were holes in the house, that the paint on the outside was deteriorating, and that some of the shingles on the roof were deteriorating , but a witness for Nowacki stated that, two hours before the hearing, he had walked around the structure and had seen that all the windows were in place. Nowacki thought that the house had not been occupied for approximately four years. He stated that the utilities were operational and that the house was heated by fuel oil. He explained that the fuel oil tank was a quarter filled and had last been used "[p]robably four years ago." Nowacki's lawyer interrupted, stating that the house would be boarded up and "put . . . in compliance with the ordinance." He added that "we've already agreed to the Complaint, which says that it has to be boarded up." Nowacki stated that the doors and windows on the house were locked, but that it had been broken into in the past.

As noted above, Nowacki appealed the Board's decision to the circuit court, which affirmed the Board. On appeal, Nowacki argues that the circuit court erred by finding that the Board's decision was supported by competent, substantial, and material evidence. First, he asserts that the evidence was not sufficient to establish that the items identified by the Township as violating the ordinance were not visible from off-site or from the roadway. In support, he argues that the Board should have relied upon the photographs he submitted at the August 2014 board meeting instead of the photographs taken by the zoning administrator. He argues that his photographs do not clearly depict the various objects, vehicles, and structures identified as being on his properties in violation of the ordinance.

Yet, the existence of conflicting evidence does not mean that the Board's decision was not based upon substantial, competent, and material evidence. "Evidence is competent, material, and substantial if a reasoning mind would accept it as sufficient to support a conclusion." *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 63; 678 NW2d 444 (2003). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a scintilla, but less than a preponderance of the evidence." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 584; 701 NW2d 214 (2005). Here, the record reflects that the Board was able to view multiple photographs of the property. Plainly visible in the photographs were various items, including pallets, tires, trailers, oil drums, campers,

_____

pillars" visible in one photograph, Nowacki acknowledged that they had been there a long time, and that it was part of a building that he had been planning on putting up since 1990. He admitted that there was a large pile of yard waste, consisting of branches and tree trimmings. Nowacki also had two cartop carriers, which he had not used in "a long time" because he had not gone camping "in quite awhile." Another item was a "pole [Nowacki] purchased because [he] want[ed] to put a wind charge at the top of it." He explained that he did not have a wind charger yet, but that he had the pole for approximately six or eight months. Two travel trailers were in the yard, one with a window out; Nowacki stated that one was a wood shed and the other was a licensed trailer that he used to go camping. Nowacki stated that the two semi-truck trailers were used for storage. When the Board asked that Nowacki identify "the stuff he does use," Nowacki's lawyer stated "[t]he stuff he doesn't use, and it's visible from the road, we probably will agree that it has to be removed" or "shield[ed] so it's not visible."

yard waste, and more. Although the photographs taken by the zoning administrator were taken using a telephoto lens, the administrator stated that all the items were visible from the road and that he only used the telephoto lens to more clearly identify the nature of the items. Further, as recognized by the Board, the photographs were taken during the summer. The presence of tress and other brush, therefore, partially obstructed some of the items, but, as admitted by Nowacki's lawyer, those obstructions would not be present to the same degree during winter months. The Board also relied on the fact that an adjoining property owner had previously complained about the condition of Nowacki's property. It is reasonable to infer that if a neighboring property owner complained about the items, that the items were, in fact, visible from the road. In sum, although Nowacki would have preferred the Board credit his evidence, there was an abundance of evidence upon which the Board could base its decision to find that the objects, vehicles, and structures on the property were visible from the roadway or off-site, as required by the blight ordinance.

Next, Nowacki argues that the items were not all "junk," i.e., worn-out, unusable, or discarded. He selectively directs this Court to particular objects that he contends the Board improperly classified as junk, including an old tractor, two semi-trailers, a camping trailer used to store wood, a Hi-Lo, a fuel oil tank, building blocks, a band saw, a burn barrel, pieces of glass, cables or wires, and a portable generator. However, during the hearing, the zoning administrator stated that the camping trailers were "falling apart," that the tractor was "sitting under the trees in the back" and was "deteriorating," and that the Hi-Lo was also just "sitting in the middle of the field deteriorating." Additionally, numerous photographs were submitted depicting the identified objects and their condition. Thus, based on everything presented at the hearing, there was, in fact, evidence that the objects listed in the Board's resolution were junk as that term is defined by the ordinance. Critically, the ordinance defines junk as objects that are "worn-out, unusable, or discarded." The word "or" is a disjunctive term that indicates a choice between alternatives *Paris Meadows*, *LLC v Kentwood*, 287 Mich App 136, 148; 783 NW2d 133 (2010). Consequently, evidence that the items were worn-out or discarded is evidence that the ordinance was violated, notwithstanding that some of the challenged objects might have been useable, as opposed to unusable. Finally, we note that although the two semi-trailers and the hauling trailer are not motor vehicles because they lack a motor, the definition of junk—not junk motor vehicles—includes a non-exhaustive list of examples of objects that can be junk. That definition expressly includes "campers." Given that semi-trailers, like campers, can become worn-out, unusable, or discarded, the mere fact that the trailers lack a motor does not immunize them from being considered junk under the plain language of the blight ordinance.

In sum, we discern no basis to overturn the circuit court's order finding that the Board's decision was supported by competent, material, and substantial evidence.

Affirmed. The Township may tax costs as the prevailing party. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly